BALLARD and another, Respondents, v. LUMBERMENS MUTUAL CASUALTY COMPANY, Appellant.

*January 9—January 31, 1967.*

604

For the appellant there was a brief by *Hayes & Hayes* of Milwaukee, and oral argument by *Hanlin J. Hayes*.

For the respondents there was a brief by *Lowry, Hunter & Tikalsky* of Waukesha, and oral argument by *Donald J. Tikalsky*.

HEFFERNAN, J. The trial judge stated when ruling on the defendant's motions after verdict:

"The damages awarded by the Jury are high. However, there is credible evidence to sustain them, and the Court cannot say that they are excessive."

The review of this court:

". . . must be based on the rule that when there is any credible evidence which under any reasonable view supports the jury finding, especially when the verdict has the approval of the trial court, it should not be disturbed. This is another way of saying the evidence must be viewed in the light most favorable to the verdict." *Springen v. Ager Plumbing & Heating, Inc.* (1963), 19 Wis. (2d) 487, 489, 120 N. W. (2d) 692.

We have also said:

"The amount of damages awarded is a matter resting largely in the discretion of the jury. The verdict will not be upset merely because the award was large or because the reviewing court would have awarded a lesser amount, but rather only where it is so excessive as to indicate that it resulted from passion, prejudice, or corruption, or a disregard of the evidence or applicable rules of law. Evidence must be viewed in the light most favorable to the verdict. A damage verdict which has

been approved by the trial court will not be disturbed if 'there exists a reasonable basis for the trial court's determination after resolving any direct conflicts in the testimony in favor of plaintiff.' " *Kablitz v. Hoeft* (1964), 25 Wis. (2d) 518, 525, 131 N. W. (2d) 346.

While we have repeatedly said that this court will view with particular favor a verdict that has the trial judge's approval, that attitude on the part of the supreme court presupposes that there has been some analysis of the evidence underlying the verdict and that such analysis appears in the trial judge's memorandum. We stated in *Boodry v. Byrne* (1964), 22 Wis. (2d) 585, 589, 126 N. W. (2d) 503:

"The trial court, however, is not required to search out one or several isolated pieces of testimony, which standing alone might sustain the damages found by the jury, but rather must review all the evidence bearing on damages and then, viewed reasonably as a whole, consider the same in the light most favorable to the plaintiff."

It is obviously of great importance that review be made by the trial judge, whose determination is relatively contemporaneous with the trial and the verdict of the jury and that there appear in his memorandum opinion an indication of the rationale used in exercising his discretion to sustain or set aside the jury verdict. He is far better able than we are to analyze the evidence and to make an appraisal of the reasonableness of damages. As we said in *Moritz v. Allied American Mut. Fire Ins. Co.* (1965), 27 Wis. (2d) 13, 24, 133 N. W. (2d) 235:

"There is no analysis of the evidence and the trial court has not given the parties or this court the benefit of his observations bearing in mind that he not only sees the parties and other witnesses but hears their testimony. We can only read from the transcript.

" 'Because of the advantage of personal observation enjoyed by the trial judge . . . his order will be reversed . . . only if we find an abuse of discretion on the part of the trial court.'

"A trial court reviewing a personal-injury jury verdict and finding such a verdict excessive should state its reasons for its determination. In the absence of such an analysis this court on appeal must, as here, review the entire record as a matter of first impression . . . . In so doing, this court, of course, applies the same criteria for determining whether or not a verdict is excessive as govern review of the verdict by the trial court in the first instance."

These standards set forth above apply with equal force where the trial judge has found the verdict not excessive. The trial judge in the instant case, while stating that the verdict was supported by credible evidence, neither analyzed any particular evidence nor stated the rationale upon which he reached his conclusion. The absence of any such discussion deprives the plaintiffs of the additional weight that is given to a verdict that has the approval of the trial judge. We, therefore, look to the evidence *ab initio,* giving no weight to the conclusion of the trial judge that the evidence supports the verdict or that the damages are not excessive. We are obliged, however, to resolve all conflicts in the testimony in a light most favorable to supporting the jury's verdict, *i.e.,* is there any credible evidence to support it. *Springen v. Ager Plumbing & Heating, Inc., supra,* page 489. In light of these principles, we turn to the disputed items of damage.

*Were the damages awarded for past and future wage losses excessive?*

Mrs. Ballard was a part-time cashier and clerk working for Robert Hall, a retail clothier. She had been so employed for several years, and there was clear and convincing evidence that she would have been able to continue to work at even longer hours at a higher wage rate after the accident. Two physicians testified that the disabilities Lorna Ballard sustained were permanent, and

she stated that after her injuries she was easily fatigued and could not work the hours that were previously expected of her. Other employees in the store testified to her appearance of fatigue, and the assistant manager said that her ability to work efficiently diminished after the accident. The testimony is undisputed that the plaintiff sustained a diminution in her earning power and that such diminution was reflected in her reduced wages after the accident. The defendant contends that the award of $4,000 for loss of earnings is excessive, since there is no proof of the permanency of her opportunity to work at Robert Hall or elsewhere, and that the diminution of earnings is not sustained by the evidence. The defendant, of course, errs if it contends that damages for the inability to work are to be measured in terms of loss of earnings. The proper test is whether the plaintiff's *capacity* to earn has been impaired, although the comparison of the earnings after the accident as compared to the earnings before the accident is some evidence of earning capacity. *Boodry v. Byrne* (1964), 22 Wis. (2d) 585, 594, 126 N. W. (2d) 503.

"In determining past and future loss of earning capacity the question is not whether plaintiff would have worked, by choice. He is entitled to compensation for his lost *capacity* to earn, whether he would have chosen to exercise it or not." Schreiber, Damages in Personal Injury and Wrongful Death Cases (PLI, 1965), p. 36; see also Ghiardi, Personal Injury Damages in Wisconsin, p. 123, sec. 8.01.

Accordingly, there need be no proof of the availability of future employment if there is proof of a lessened capacity. Impairment of the plaintiff's capacity to earn was established by the testimony of two physicians that her disability is permanent and that her inability to work to the same capacity as before is the result of the accident. Where there is, as here, competent evidence that the injury is permanent, the jury could properly draw

the inference that there was a compensable impairment of earning capacity. *Reinke v. Woltjen* (1966), 32 Wis. (2d) 653, 661, 146 N. W. (2d) 493.

We also conclude that the amount of the damage award is supported by the evidence. The plaintiff's wage record shows that in 1963, the last full year she worked before the accident, she earned $1,577.49, and in 1965, the first full year she worked after the accident, she earned $1,329.78, or a difference of $247.71. Taking a view of the evidence most favorable to Lorna Ballard, as we must, it would appear that this difference represents a wage loss for 1965 that is fairly attributable to the accident.

In addition, she suffered a 1964 wage loss in the amount of $260.40 as the result of a total inability to work. This loss is supported by ample credible evidence consisting of testimony and payroll summaries. Thus, the plaintiff, *before* trial, sustained a wage loss of something over $500. The jury awarded a total sum of $4,000 for past and future loss of earnings. We find it difficult to conclude that under the circumstances an award of under $3,500 for future wage losses is excessive. If that sum is prorated on the basis of the annual earnings diminution of $240 per year, it will be seen that the jury awarded loss of earnings for approximately fifteen years, despite the fact that Lorna Ballard was only thirty-eight years of age and had a life expectancy of thirty-nine more years. Under the circumstances, it cannot be said that the jury in regard to this item made an award that was excessive or even particularly generous.

In *Reinke v. Woltjen, supra,* we have recently considered the standards by which past and future loss of earnings are to be measured. No good purpose would be served by repeating *in extenso* that discussion. Suffice it to say that the "impairment of earning capacity is generally to be arrived at by comparing what the injured party was capable of earning at or before the

time of the injury with what he was capable of earning after it occurred." Ghiardi, Personal Injury Damages in Wisconsin, p. 133, sec. 8.04. Applying these standards it is clear that the damages awarded by the jury are supported by credible evidence in the record.

*Does the evidence sustain the jury's award of $10,000 for past and future pain, suffering, and disability?*

The verdict properly lumped the item of damages for past and future pain and suffering into one award. Nevertheless, different testimony is required to support award of damages for these two periods. We held in *Bethke v. Duwe* (1950), 256 Wis. 378, 383, 41 N. W. (2d) 277, that medical testimony is not required to support a damage verdict for past pain and suffering and subjective symptoms alone are sufficient. See also *Sennott v. Seeber* (1959), 6 Wis. (2d) 590, 593, 95 N. W. (2d) 269. However, where the pain and suffering or the injury itself is subjective in character, a damage award for permanent or future injury must be supported by the opinion of a medical expert which is based upon either a medical certainty or probability. *Diemel v. Weirich* (1953), 264 Wis. 265, 58 N. W. (2d) 651.

There was evidence that the plaintiff suffered pain in the upper back, shoulders, and neck, that she had severe headaches, and that the grip in her right hand was materially weakened and, as a consequence, she was unable to hold onto objects or to perform ordinary household work requiring some manual strength. For example, she testified that she was unable to open jars, while before the accident she had no difficulty. Nor was she able to reach as high or as well with her right arm as she was formerly able to. She did not sleep well and had difficulty in sleeping three or four nights each week. At times the pain was so bad that she cried. She also testified that she was unable to enjoy sports and household activities that she participated in before the ac-

cident. She could not bowl, golf, swim, play basketball and volley ball, garden, or can and freeze fruits and vegetables. She testified that she formerly enjoyed working on the lawn and assisted her husband with painting. Some of these sports activities have been totally curtailed; for example, because of weakness in her right hand, she cannot hold a bowling ball. Her participation in other sports has been markedly diminished because she becomes unduly fatigued. Although she has attempted to play golf with her husband since the accident, she became so tired that she could not complete the round.

These are primarily subjective symptoms testified to by Lorna Ballard. However, in response to a hypothetical question, Doctor Sweed at trial testified to a reasonable medical certainty that the disability she suffered was permanent. Doctor Peters also testified that the headaches and injuries to the upper neck, upper back, and right arm were permanent and were the result of the accident. Both physicians based their conclusions, in part at least, upon objective findings. While it is true that Lorna Ballard sustained no visible evidence of trauma, both physicians did observe muscle spasms in the upper back. While Doctor Sweed's observation was made soon after the accident, and a spasm was observed on only one occasion, Doctor Peters observed muscle spasms just eight days prior to the trial. Doctor Peters also testified that, from a grip test, he concluded that Lorna Ballard had lost strength in her right hand. It is therefore apparent that the verdict rested not only upon subjective symptoms fortified by medical testimony that the disability was permanent, but, to a degree at least, upon objective symptoms of muscle spasm.

After resolving all conflicts in the testimony in favor of the verdict, we cannot say that the damages are excessive. There was credible evidence that the plaintiff chronically suffered severe pain and headaches, that there was a loss of strength in her right hand and arm,

that she became fatigued easily, and as a consequence of these residual disabilities she was unable to fully enjoy life or participate in recreational and household activities. In view of the testimony that this condition was permanent, and that Lorna Ballard's life expectancy was almost another forty years, it cannot be said that the award of $10,000 was excessive.

*Were the damages awarded to the husband for loss of society, companionship, and services of his wife excessive?*

The jury awarded Lynn Ballard $2,000 for the past, present, and future loss of services, society, and companionship of his wife. The above discussion details the various respects in which Lorna Ballard sustained injuries that resulted in her past and future pain and suffering. It is obvious that these very injuries damaged not only Lorna Ballard, but Lynn Ballard, her husband. Lorna Ballard testified that she played golf with her husband before the accident, but she could not do so afterwards. This results in an item of damage to Lorna Ballard, her loss of pleasure in playing golf, and in addition a distinct and separate item of damages to Lynn Ballard, who as the result of the negligence of the defendant's insured can no longer enjoy the pleasure of his wife's company while playing golf. Such loss of companionship could be detailed in regard to each activity which Lynn Ballard previously enjoyed in the company of his wife—bowling, swimming, yard work, etc.

In addition, the husband was deprived of his wife's services. She is no longer able to do the things around the house that she formerly could do with ease. She can no longer open jars and help her husband with painting, and since the accident Mr. Ballard's mother has helped with the housework "on and off."

Moreover, Mr. Ballard has testified that his wife complains of pain that brings her to tears and causes chronic

sleeplessness. When he puts his arm around her shoulders, she "winces."

These facts clearly establish a basis for the jury's award. It is apparent that before the injury Lorna Ballard was not only an efficient housewife, but was a companion to her husband in his leisure hours. Since the injury, her ability to share in her husband's activities has been severely diminished. There is evidence that Lynn Ballard's helpmate and companion has been transformed into a semi-invalid by the negligence of the defendant. It would appear that $2,000 is little enough compensation for the injury.

Counsel for the appellant would deprecate the loss sustained by the husband because of Lorna Ballard's inability to share his leisure hours on the golf course or the bowling alley, and argues that there is little or no loss because "he was unable to put his arm around her shoulders because she winced." However, a wife is not a servant, and the husband's loss is not in the main to be measured by the extent that his spouse can no longer serve as a handmaiden. The worth of a wife is not determined solely by the extent she can relieve her husband of the expense of other servants. Schreiber, Damages in Personal Injury and Wrongful Death Cases (PLI, 1965), at page 359, points out that, "The concept of consortium . . . includes the society, affection, and sexual companionship of the spouse, and the right to performance of material services." [1] Wisconsin Jury Instructions—Civil 1815 correctly states our position that the loss to be compensated is for the aid, assistance, comfort, society, and companionship during the period of disability.

McCormick in his treatise on Damages (hornbook series), at page 332, states:

---

[1] "Wives are young men's mistresses, companions for middle age, and old men's nurses." Francis Bacon, Of Marriage and Single Life.

"The husband's interest in his wife's companionship is not a pecuniary one, nor can any direct evidence as to its value be furnished, and the jury must be left a large discretion in determining the sum to be allowed. . . . loss of the wife's society is a personal and sentimental injury to the husband, and not a commercial one . . . ."

A note appearing in 61 Columbia Law Review, 1341, is reprinted in Schreiber, Damages in Personal Injury and Wrongful Death Cases (PLI, 1965), at page 359. It emphasizes that the primary interest to be protected by the courts is the marital one, and that the chief element of damages is the loss of society of the wife, and "loss of services is . . . considered merely an element in aggravation of damages . . ." *supra,* page 362. The author of the article notes, *supra,* page 373, that some "courts have rejected claims . . . because they believe that the action is anachronistic, having originally been based on the wife's position of servitude." The author concludes that historically such an analysis is incorrect and that the true basis for recovery is that the "marital relationship, the foundation of the family structure, should be deemed of sufficient import to society to be accorded a degree of legal protection commensurate with its value." *Supra,* page 374.

In view of the injury sustained, and the evidence produced that clearly shows the effect of that injury in depriving Lynn Ballard, to a substantial degree, of the society and companionship of his spouse and of her material services, we cannot say that the award is excessive.

*Did the court err in refusing to instruct jury that it could infer that a chiropractor if called by Lorna Ballard would have testified unfavorably to her?*

The testimony revealed that just before the accident Lorna Ballard had been treated by a chiropractor for a

lower-back pain, as contrasted to an upper-back pain which was the subject of this litigation. Whether, after the accident, she saw the chiropractor for the upper-back injury is not clear from the record, although defendant asserts that Lorna Ballard was so treated.

The chiropractor was not produced at trial, and the defendant asked that the jury be given the instruction as provided by Wisconsin Jury Instructions—Civil 410 that when an available witness to a material fact is not produced, and it normally would be to the interest of a party to produce him, that the failure to produce such a witness gives rise to an inference that the testimony would be unfavorable.

We conclude that the trial judge properly refused to give the requested instruction. He pointed out in his decision on motions after verdict that such testimony would probably have been objected to by the defendant in any event and, moreover, he did permit the defendant to comment to the jury upon the nonproduction of the chiropractor and, as a consequence, the defendant could not have been prejudiced by the failure to give the specific instruction.

In addition, it should be noted that there was no intimation that the chiropractor was a witness to a material fact. Moreover, Doctor Sweed and Doctor Peters testified in regard to the extent and duration of the plaintiff's injuries. Under the circumstances, the testimony of the chiropractor might well have been cumulative. It would hardly have been expected under these circumstances that it would be either normal or material to call a chiropractic witness when medical doctors were available and their testimony was not likely to be objected to by the defendant. A party to a lawsuit does not have the burden, at his peril, of calling every possible witness to a fact, lest his failure to do so will result in an inference against him. The requirements of the absent material witness instruction should be narrowly construed to be applicable only to those cases

where the failure to call a witness leads to a reasonable conclusion that the party is unwilling to allow the jury to have the full truth. Wigmore states the rationale to be:

"The nonproduction of evidence that would naturally have been produced by an honest and therefore fearless claimant permits the inference that its *tenor is unfavorable to the party's cause*." 2 Wigmore, Evidence (3d ed.), p. 162, sec. 285.

Wigmore cites the case of the Chimney-sweepers Jewel:

". . . a chimney-sweeper's boy, finding a jewel, took it to the defendant, a jeweler, for appraisal, but the defendant would not restore it. In an action of trover, in proving the value, 'the Chief Justice [Pratt] directed the jury that unless the defendant did produce the jewel and show it not to be of the finest water, they should presume the strongest against him, and make the value of the best jewels the measure of their damages; which they accordingly did.'" (*Armory v. Delamirie* (1722), 1 Strange 505.)

It is apparent that policy factors behind this rationale are not present in this case. The plaintiff herein did, in fact, produce two or three possible witnesses to the same facts. The defendant, by being allowed to comment to the jury, was able to make the point he desired and was in no way prejudiced. It was not error to refuse the instruction.

*By the Court.*—Judgment affirmed.