Robert A. BROGAN, Plaintiff-Respondent,

v.

## INDUSTRIAL CASUALTY INSURANCE COMPANY, a foreign mutual legal reserve company, Defendant-Appellant.†

Court of Appeals

*No. 85–0675. Submitted on briefs October 1, 1985.—Decided April 1, 1986.*

(Also reported in 392 N.W.2d 439.)

† Petition to review denied. STEINMETZ, J., dissents.

For the plaintiff-respondent the cause was submitted on the briefs of *Kersten & McKinnon* by *E. Campion Kersten,* of Milwaukee.

For the defendant-appellant the cause was submitted on the briefs of *Mulcahy & Wherry, S.C.,* with *William J. Mulligan, Mary A. Moore* and *Ernest J. Philipp* of counsel, of Milwaukee.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

SULLIVAN, J. Industrial Casualty Insurance Company (Industrial) appeals a judgment awarding damages to Robert A. Brogan (Brogan) for Industrial's breach of contract. Because the contract was not void, we affirm the court's finding of liability. Because the jury's damages verdict is supported by the evidence, except for $37,280 which Industrial already paid Brogan, we affirm the judgment after modifying it. Because we are reducing the damages awarded by the jury, the cause is remanded so that the trial court may recalculate the damages and enter judgment accordingly.

In 1976, Brogan contracted with Industrial's predecessor, Personal Indemnity Mutual Insurance Company (Personal), to serve as its vice president in charge of sales. Brogan retired in November, 1981. He served on Personal's board of directors for all but the first few months of his employment. He resigned from the board when he retired.

Brogan's duties included recruiting and supervising sales agents. His compensation consisted primarily of a commission on premiums brought in by the agents he recruited. The contract entitled Brogan to receive a percentage of the first-year premiums of policies sold

during his employment and 5% of the renewal premiums of those policies for as long as they remained active, even if Brogan no longer worked for Personal. The contract was amended several times. The most recent amendment, signed six months before Brogan retired, changed his 5% commission on renewals to a range of 2.5%–7.5%, which averaged out to 5%.

During Brogan's tenure at Personal, both the sales force and premium sales increased substantially as a result of his efforts. Because commissions and administrative costs are much higher on first-year premiums than on renewal premiums, the increase in sales generated by Brogan resulted in a corresponding increase in the ratio of Personal's premium income to its surplus funds, the funds used to pay claims. According to a 1981 report by the state insurance commissioner, Personal was "increasing its loss exposure but maintaining a diminishing portion of premium dollar to cover such exposure." Personal's high premium-to-surplus ratio "contribute[d] to a hazardous condition." The commissioner's 1981 report also questioned the legality of Brogan's contract under sec. 611.63, Stats., since Brogan's income was tied to premium sales.

Shortly after Brogan's retirement, Personal and Industrial entered into a reinsurance agreement whereby Industrial assumed Personal's contract liability. Personal later dissolved and Industrial took over its operations. Industrial paid renewal commissions to Brogan for the first five months of 1982 in the amount of $37,280. Industrial then stopped paying, and Brogan commenced this suit.

Trial was bifurcated. The court held a trial on the liability issue and found Industrial liable under the contract for its failure to continue paying Brogan his

5% renewal commissions. A jury trial on the issue of damages followed. The jury returned a special verdict awarding Brogan $319,567 in past damages and $550,000 in future damages. Industrial asserts on appeal that the trial court erred in imposing liability and in approving the jury's damages verdict.

## LIABILITY

Industrial argues that the trial court erred in refusing to find the contract void for illegality. Industrial asserts that the contract violates sec. 611.63(5), Stats., and that, therefore, the court may not enforce the contract. We agree that the contract does not comport with sec. 611.63(5), but we hold that it is nonetheless valid and enforceable.

Section 611.63, Stats., deals with executive compensation in domestic insurance companies. Subsection (5), entitled "Prohibited Criteria," reads as follows:

> No arrangement for compensation or other employment benefits for any *director, officer or employe with decision-making power* may be made if it would:
>
> (a) Measure the compensation or other benefits in whole or in part by any criteria that would create a financial inducement for him or her to act contrary to the best interests of the corporation. . . . [Emphasis added.]

The parties do not dispute the terms of the contract. They disagree only as to whether the statute applies to Brogan and, if it does, whether the contract created a financial inducement for Brogan to act contrary to Industrial's best interests. Applying a statute to the particular facts of a case is a question of law. *Bitters*

*v. Milcut, Inc.,* 117 Wis. 2d 48, 49, 343 N.W.2d 418, 419 (Ct. App. 1983). Hence, we will not defer to the trial court's determination. *See Ball v. District No. 4 Area Board,* 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

In asserting that sec. 611.63(5), Stats., does not apply to the contract, Brogan insists that the phrase "with decision-making power" applies to all three antecedents: "director, officer or employe." Brogan argues that his decision-making power extended only to sales and that his limited decision-making power places him outside the ambit of the statute. This position is unreasonable.

Section 611.51(6), Stats., states that the board of directors "*shall manage* the business and affairs of the corporation." [Emphasis added.] Directors have intrinsic decision-making power. Similarly, officers have decision-making power by virtue of their offices. Common sense demands that the phrase "with decision-making power" qualifies only its nearest antecedent, "employe." Because Brogan was an officer and a director, the compensatory arrangement he had with Personal is governed by sec. 611.63(5), Stats.

We next turn to the contract's validity in light of that statute. Section 611.63(1), Stats., makes sec. 181.04(15), Stats., applicable to mutual insurance companies such as Personal. Section 181.04 lists the general powers of a nonstock corporation, and subsection (15) authorizes the corporation to establish and pay incentive plans for its directors and officers "when no inconsistent provision is made by law." Section 181.04. Hence, the corporation has authority to establish and

pay only those incentive plans that are consistent with sec. 611.63. We conclude that Brogan's contract is not such a plan and that Personal, therefore, was without corporate authority to enter into it.

Brogan was hired to increase Personal's sales. Because of Brogan's work in recruiting agents and promoting sales, Personal's premium-to-surplus ratio increased to the point where Personal had to obtain reinsurance from Industrial. It was the growth generated by Brogan, therefore, that led to Personal's financial crisis and eventual dissolution. This same growth caused Brogan's vested renewal commissions to increase.

In his role as sales vice president, Brogan had no authority to determine the character of risks, to make underwriting decisions, or to decide the cost or availability of insurance policies. As a director, however, Brogan had broad management authority, *see* sec. 611.51(6), Stats., and he was a director for most of his tenure as an officer. Brogan the officer was responsible for both Personal's growth in first-year sales and the corresponding growth in Brogan's commissions. Brogan the director, meanwhile, had a duty to assure that Personal's rapid growth in sales did not imperil its financial health. Because the amount of Brogan's compensation was directly related to the amount of sales, the contract created a financial inducement for him to promote increased sales and to keep commissions high at the expense of maintaining adequate surplus funds.

We stress that sec. 611.63(5), Stats., requires us to determine only whether the contract created a financial inducement for Brogan to act contrary to Personal's best interests. We need not, and do not, determine whether Brogan did act in such a manner. We conclude

that the contract created the inducement prohibited by sec. 611.63(5). Because the contract was prohibited by that statute, Personal had no corporate power under sec. 181.04(15), Stats., to enter into it, and we must therefore determine the effect of Personal's unauthorized action.

Section 611.07(2), Stats., states that sec. 181.05, Stats., applies to the unauthorized acts of a mutual insurance company. Section 181.05 states in part that *"[n]o act* of a corporation . . . *shall be invalid* by reason of the fact that the corporation was without capacity or power to do such act. . . ." [Emphasis added.] The contract, therefore, is valid even though it is based on criteria prohibited by sec. 611.63(5), Stats. *See also* 14 S. Williston, *A Treatise on the Law of Contracts* § 1630B at 26 (W. Jaeger 3d ed. 1972) ("Unless no other conclusion is possible from the words of a statute it should not be held to make agreements contravening it totally void."). Personal did not act illegally; it merely acted without power.

Such a lack of corporate power or capacity, while not voiding a contract, may be asserted in three situations:

(1) In a proceeding by a member or director against the corporation to enjoin the doing of any act or acts or the transfer of real or personal property by or to the corporation. . . .

(2) In a proceeding by the corporation, whether acting directly or through a receiver, trustee, or other legal representative, or through members in a representative suit, against the incumbent or former officers or directors of the corporation.

(3) In a proceeding by the attorney general, as provided in this chapter, to dissolve the corporation,

> or in a proceeding by the attorney general to enjoin the corporation from performing unauthorized acts.

Sec. 181.05, Stats. The circumstances of subsections (1) and (3) clearly do not apply. Brogan is seeking not to enjoin Personal's unauthorized act but to enforce it, and the attorney general is not a party.

Nor does subsection (2) describe this present situation. Section 181.05(2), Stats., would apply, for example, to a receiver's suit against the board of directors whose unauthorized acts caused the corporation to go into receivership. In contrast, this is an action by an individual, in his individual capacity against the corporation, in which the corporation merely raises its lack of corporate capacity as an affirmative defense. We hold that a corporation's assertion of an affirmative defense against an individual officer or director is not "a proceeding by the corporation" within the meaning of sec. 181.05(2). Industrial, therefore, may not assert its predecessor's lack of capacity to make the contract as a defense in this action.

For the reasons stated above, the contract is valid and Industrial's affirmative defense fails. Industrial is therefore liable under the contract and Brogan is entitled to his renewal commissions. We next address the issues concerning damages.

## DAMAGES

The jury awarded Brogan $319,567 in past damages and $550,000 in future damages. Industrial asserts that the verdict as a whole is excessive, that the future damages award is unsupported by the evidence, and that the past damages award is duplicative in its

inclusion of interest and $37,280 in payments already made to Brogan. We hold that the past damages award is not supported by the evidence to the extent of $37,280, but we uphold the verdict in all other respects.

■The amount of damages awarded is a matter resting largely in the jury's discretion. *Ballard v. Lumbermens Mutual Casualty Co.,* 33 Wis. 2d 601, 605, 148 N.W.2d 65, 68 (1967) (citation omitted). A verdict that has the trial court's approval will be viewed with particular favor on appeal, provided that the trial court analyzed the evidence underlying the verdict and that such analysis appears in the trial court's memorandum decision. *Id.* at 606, 148 N.W.2d at 68. The trial court has abused its discretion if there is no evidence that the trial court has undertaken a reasonable inquiry and examination of the facts as a basis for its decision. *McCleary v. State,* 49 Wis. 2d 263, 277–78, 182 N.W.2d 512, 520 (1971).

■Because the trial court here approved the jury's damages award without giving reasons for doing so, we must examine the evidence *ab initio* to determine whether there is any credible evidence to support the verdict. *Badger Bearing, Inc. v. Drives & Bearings, Inc.,* 111 Wis. 2d 659, 670, 331 N.W.2d 847, 854 (Ct. App. 1983). We view the evidence in the light most favorable to the plaintiff. *Fahrenberg v. Tengel,* 96 Wis. 2d 211, 231, 291 N.W.2d 516, 525 (1980). A damages verdict will not be upset on appeal merely because it was large or because this court would have awarded a lesser amount, but rather only when the award is so excessive as to indicate that it resulted from passion, prejudice, or corruption, or that the jury disregarded the evidence

or applicable rules of law. *Ballard,* 33 Wis. 2d at 605, 148 N.W.2d at 68 (citation omitted).

Brogan's expert, Norman Buck (Buck), testified that Brogan's past and future damages had a present value between $503,280 and $614,815, depending on the rate at which Brogan's policies would lapse. Buck added 12% simple interest to the past damages, totalling $319,567, and 12% compounded interest to the future damages. Industrial's expert, Mark Litow (Litow), testified that the present value of Brogan's past and future damages ranged from $283,964 to $741,084, depending on factors such as the policy lapse rate and the credibility of the data provided by Industrial. Litow testified that about $550,000 of his highest estimate represented future damages.

Apparently, the jury chose to accept Buck's figures for past damages and Litow's figures for future damages, even though those two figures together total more than either expert's highest estimate of combined past and future damages. Industrial argues that the total award was thus excessive.

■When the parties offer conflicting testimony by qualified experts, the issue becomes one of weight of the testimony and credibility of the witnesses, which is within the province of the jury. *Milbauer v. Transport Employes' Mutual Benefit Society,* 56 Wis. 2d 860, 867, 203 N.W.2d 135, 139 (1973). The jury may accept or disregard expert testimony. *Fehrman v. Smirl,* 20 Wis. 2d 1, 15, 121 N.W.2d 255, 263 (1963). In this case, the jury was asked separate questions on past and future damages. The jury did not act improperly merely because it accepted Buck's testimony on one question and Litow's testimony on the other. The verdict as a

whole is not excessive merely because the sum of the past and future damages awarded is greater than the aggregate estimates of the experts. Rather, we must examine the record to see if each of the jury's answers to the special verdict is supported by credible evidence.

Damages for breach of contract need not be ascertainable with absolute exactness or mathematical precision. The evidence is sufficient if it enables the factfinder to make a fair and reasonable approximation. *Thorp Sales Corp. v. Gyuro Grading Co.,* 107 Wis. 2d 141, 152–53, 319 N.W.2d 879, 884 (Ct. App. 1982), *aff'd* 111 Wis. 2d 431, 331 N.W.2d 342 (1983).

Industrial claims that the $550,000 future damages award was based on faulty, unreliable figures and thus cannot stand. That $550,000 amount, however, was presented by Industrial's own expert and was based on data supplied to the expert by Industrial. Having caused the uncertainty of proof, if any, Industrial is precluded from demanding a more precise measure of damages. *Novo Industrial Corp. v. Nissen,* 30 Wis. 2d 123, 133, 140 N.W.2d 280, 285 (1966). Industrial cannot complain that its own evidence was accepted by the jury. The future damages award therefore stands.

We next consider the jury's past damages award. Industrial asserts that the past damages award is duplicative in two respects: 12% interest was both included in Buck's calculation and taxed against the verdict, and Buck's past damages estimate included the $37,280 in commissions that Industrial paid Brogan in early 1982.

Trial on the damages issue had originally been set for December 5, 1983. Industrial was not prepared on

that date, however, and it requested a continuance. The court granted the continuance subject to certain conditions contained in its order of December 14, 1983. The pertinent part of that order reads as follows:

> Any judgment for damages the plaintiff may hereafter recover shall bear interest at the rate of twelve percent per annum retroactively from December 5, 1983 to the date of entry of judgment, *in addition to such other interest,* costs and disbursements as are allowed by law. [Emphasis added.]

The jury properly considered the evidence before it that Brogan's past damages should include a 12% interest factor to compensate him fully for Industrial's breach. Industrial was aware of the December, 1983, order but did not request that the jury be instructed to exclude interest in its calculation of Brogan's past damages. Industrial did not appeal the order, nor did it object to the taxation of costs pursuant to sec. 814.10, Stats. There is credible evidence to support the jury's inclusion of a 12% interest factor in its past damages award, and there is no reason not to enforce the December, 1983, order.

Finally, Industrial argues that the past damages award erroneously includes the $37,280 that it paid Brogan in the first five months of 1982. We agree that the verdict is excessive to that extent and modify it accordingly.

Buck's report, which went to the jury, stated that whatever amount Brogan had already been paid would have to be deducted from Buck's estimate of Brogan's damages. Brogan testified that Industrial had paid him $37,280 for renewal commissions earned through May, 1982. The jury apparently disregarded this evidence by failing to deduct that amount from Buck's calculation

of past damages. Thus, the verdict is excessive to that extent. Because Buck added 12% per annum simple interest to determine the present value of Brogan's past damages, that amount must be deducted as well. Therefore, the judgment is modified by reducing Brogan's past damages award by $37,280 plus 12% per annum simple interest on that amount from the date of the payments in 1982 until January 1, 1985, the date of Buck's report. We remand to the trial court so that it may enter judgment accordingly.

*By the Court.*—Judgment modified and as modified affirmed; cause remanded with directions.