**COURT OF APPEALS
DECISION
DATED AND FILED**

**March 25, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2024AP880**

**STATE OF WISCONSIN**

Cir. Ct. No.  2023SC22069

**IN COURT OF APPEALS
DISTRICT I**

ANTOINETTE MARIE PACHECO,

PLAINTIFF-RESPONDENT,

V.

HOOPS MANAGEMENT LLC,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Milwaukee County: REYNA I. MORALES, Judge. *Affirmed*.

¶1    GEENEN, J.[1]    Hoops Management LLC ("Hoops"), by its agent Michael Cerns, appeals from the circuit court's judgment awarding damages to

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

Antoinette Marie Pacheco for wrongfully evicting her in September 2020. We affirm.

## BACKGROUND

¶2    Most of the facts relevant to this appeal are undisputed.[2]  Pacheco, with her three young children, rented a single-family home from Hoops for $850 per month.  Pacheco was required to pay the water bill for the rented property, and at some point, she fell behind.  In February 2020, Hoops provided notice to Pacheco that she was in default because of the unpaid water bills, and in March 2020, Hoops filed an eviction action.  The eviction proceedings were delayed and rescheduled multiple times due to complications caused by the COVID-19 pandemic, but the parties eventually reached a resolution to the eviction action on August 3, 2020.

¶3    The parties decided to resolve the eviction action by entering into a stipulated judgment.[3]  The stipulation provided a schedule for Pacheco to pay the past due water bills, and if she complied with the schedule, the eviction action would be dismissed.  Pacheco was to pay $1,150 on or before August 3, 2020

---

[2] Although the record in this case is not as detailed as we would like, it is adequate to affirm the circuit court's judgment.  We recite only those facts and evidence from trial that are relevant to the resolution of Hoops's arguments on appeal.  Where the record on appeal is lacking, we take judicial notice of the CCAP records in this case and the related eviction case.  CCAP is an acronym for Wisconsin's Consolidated Court Automation Program, the online website which reflects information entered by court staff.  *See* WIS. STAT. § 902.01; ***Kirk v. Credit Acceptance Corp.***, 2013 WI App 32, ¶5 n.1, 346 Wis. 2d 635, 829 N.W.2d 522.

[3] At trial, the circuit court examined the stipulation, but the stipulation is not in the record.  On appeal, Hoops included a copy of the stipulation in its appendix.  We construe this as a motion to supplement the record under WIS. STAT. RULE 809.15(3).  In her brief, Pacheco did not object to the inclusion of the stipulation in Hoops's appendix.  In our view, granting the motion would more accurately "reflect what occurred in the circuit court[.]"  ***Id.***  We therefore grant the motion and supplement the appellate record with the stipulation.

2

($850 for August rent and $300 for the water bills), $277.10 on or before August 14, 2020 (all for the water bills), and $1,127.20 on or before September 5, 2020 ($850 for September rent and $277.20 for the remaining amount owed on the water bills and court fees related to the eviction action). However, the stipulation also stated that if Pacheco failed to follow the terms of the stipulation, Hoops was entitled to:

> vacate the dismissal and take judgment for restitution of premises (immediate Writ) with costs and disbursements with notice to the [Pacheco] after the 3rd payment or regardless of the number of payments made if [Pacheco] filed an affidavit of non-appearance and could not be present for Commissioner to confirm this stipulation, in accordance with Local Rule 3.85H.

¶4      On August 3, 2020, in compliance with the stipulation, Pacheco paid Hoops $1,250, with the extra $100 to be credited against the $277.10 water bill payment due on August 14. Pacheco did not, however, pay Hoops the remaining $177.10 on August 14, 2020.[4] On August 17, 2020, Hoops filed an affidavit of noncompliance, beginning the process of vacating the dismissal of its eviction action and obtaining a writ of restitution to evict Pacheco. *See* Milwaukee County Case No. 2020SC8240. The circuit court found at trial that Hoops did not serve a copy of the affidavit on Pacheco, a paper filer, or notify her in any way that it had been filed. The next day, on August 18, 2020, Pacheco paid Hoops $177.10 to satisfy the August 14, 2020 past due water bill payment.

¶5      On August 25, 2020, an order was signed granting Hoops a writ of restitution that was stayed until August 31, 2020. On September 5, 2020, Pacheco

---

[4] Although Pacheco testified at trial that she was in "communication" with Hoops during this time, there is no evidence that Hoops agreed to extend any deadline set forth in the stipulation.

3

paid, and Hoops accepted, $850 for prospective September rent, despite the fact that Hoops was already in possession of a writ of restitution and the lease had been terminated. Hoops agreed at trial that the $850 was for September rent and not to satisfy past due water bills or court fees.

¶6      On September 23, 2020, the writ of restitution was executed. Pacheco described at trial that the sheriff's department showed up to her home unannounced and put all of her belongings on the street. Among other damages, Pacheco testified that she paid $300 per month for two years to store all of the belongings that formerly furnished her three-level single-family home, including all furniture, a refrigerator (still full of food), a washer, a dryer, lawnmowers, and snow blowers.

¶7      On August 17, 2023, Pacheco sued Hoops in small claims court, claiming $10,000 in damages caused by Hoops unlawfully evicting her in September 2020. She sought damages for excess rent, storage fees, hotel fees, missed work, and emotional distress. She also alleged that Hoops had unlawfully withheld her security deposit in violation of WIS. ADMIN. CODE § ATCP 134.06. A small claims hearing before a court commissioner resulted in an oral decision in Pacheco's favor, awarding her a judgment of $2,000 plus costs. Hoops demanded a trial in the circuit court.

¶8      On April 3, 2024, the circuit court held a court trial which revealed the undisputed facts outlined above. The parties disputed whether Hoops served or otherwise provided notice to Pacheco that it had filed the affidavit of noncompliance, and the circuit court found that Hoops did not serve or otherwise provide notice to Pacheco that it filed the affidavit of noncompliance. The parties also disputed whether Hoops had returned Pacheco's security deposit or otherwise

sent her the required written statement accounting for all amounts withheld. However, the circuit court did not explicitly resolve this factual dispute in its decision.[5]

¶9 Citing Hoops's failure to provide notice to Pacheco, the circuit court concluded that Hoops was liable for damages and awarded Pacheco $5,000 plus costs. In its decision, the circuit court stated that it was taking into account everything that Pacheco had lost as a result of being wrongfully evicted.

¶10 Hoops appeals.

## DISCUSSION

¶11 On appeal, Hoops's arguments are largely undeveloped. We do not develop a party's argument for them. *Doe 1 v. Madison Metro. Sch. Dist.*, 2022 WI 65, ¶35, 403 Wis. 2d 369, 976 N.W.2d 584. Although *pro se* litigants are granted some leniency by courts, neither a circuit court nor a reviewing court has a duty to walk *pro se* litigants through the procedural requirements or to point them to the proper substantive law. *Waushara Cnty. v. Graf*, 166 Wis. 2d 442, 452, 480 N.W.2d 16 (1992).

¶12 Nonetheless, as best we understand them and to the extent they are adequately developed, Hoops makes five arguments: (1) that claim preclusion applies to Pacheco's wrongful eviction claims because she was required to bring

---

[5] With respect to the circuit court's failure to address the security deposit claim, we observe that on appeal, Hoops does not make any argument with respect to the security deposit claim. Pacheco, for her part, asks this court in her brief to increase the circuit court's damages award, but she did not cross-appeal the circuit court's judgment, so her request for increased damages and the security deposit claim are not properly before the court. We therefore do not discuss the security deposit claim or Pacheco's request for increased damages.

them in the 2020 eviction action; (2) that Pacheco failed to present any evidence of damages; (3) that judicial bias formed the basis of Pacheco's award of damages; (4) that WIS. STAT. § 799.24(3) gave it the right to file the affidavit of noncompliance without notice to Pacheco; and (5) that WIS. STAT. § 799.40(1m) allowed Hoops to collect prospective September rent from Pacheco even after he had filed the affidavit of noncompliance, obtained a writ of restitution, and terminated the lease.

## I. Claim preclusion does not apply to Pacheco's claims.

¶13 On appeal, Hoops appears to generally assert that Pacheco should have brought her claims in the 2020 eviction action and not as a separate action approximately three years later. The legal basis for this argument is difficult to understand; Hoops makes several undeveloped references to the circuit court's "competent jurisdiction," void judgments, the statute of limitations, and waiver without developing an argument as to any of these issues. We do not develop arguments on behalf of parties. *Doe 1*, 403 Wis. 2d 369, ¶35. However, in the circuit court, Hoops made a similar argument regarding the timing of Pacheco's claims that was clearly based on claim preclusion. We therefore address Hoops's argument in that context, and in doing so, we will address why Pacheco was not required to bring her claims in the 2020 eviction action.

¶14 "[C]laim preclusion provides that a final judgment on the merits in one action bars parties from relitigating any claim that arises out of the same relevant facts, transactions, or occurrences." *Kruckenberg v. Harvey*, 2005 WI 43, ¶19, 279 Wis. 2d 520, 694 N.W.2d 879. The doctrine has three requirements: "(1) identity between the parties or their privies in the prior and present suits; (2) prior litigation resulted in a final judgment on the merits by a

6

court with jurisdiction; and (3) identity of the causes of action in the two suits." *Id.*, ¶21. There is no doubt that the first two requirements are satisfied. Thus, we turn to whether there is identity between the causes of action in the two suits, and we conclude that there is not.

¶15 In Wisconsin, "a valid and final judgment in an action extinguishes all rights to remedies against a defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Id.*, ¶25. This "transactional approach is not capable of a mathematically precise definition, and determining what factual grouping constitutes a 'transaction' is not always easy." *Id.*, ¶25 (cleaned up). The determination of whether Pacheco's wrongful eviction action arose out of the same "transaction" as the 2020 eviction action is to be determined "pragmatically," with weight being given to "whether the facts are related in time, space, origin, or motivation … whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.*, ¶25 (cleaned up). Whether there is identity between the causes of action in the two suits is a question of law that we review *de novo*. *Id.*, ¶17.

¶16 In this case, Pacheco's claim resulted from the method by which Hoops obtained a writ of restitution and final judgment in the 2020 eviction action (i.e., violating the terms of the stipulation by not providing notice). Pacheco did not discover that she had a cause of action until after Hoops had already obtained final judgment in its favor, and Hoops does not explain why Pacheco would have been required to file her wrongful eviction action in the 2020 eviction case after

final judgment had been entered.[6]  *See Mach v. Allison*, 2003 WI App 11, ¶¶26-27, 259 Wis. 2d 686, 656 N.W.2d 766 (explaining that parties lose the presumption in favor of amendments to pleadings after final judgment has been entered).  Claim preclusion does not apply to a claim that arose after final judgment was entered in the prior lawsuit given the added obstacles to bringing a new claim in that posture and the significant inconvenience it would impose on the circuit court.  Accordingly, we reject Hoops's argument that Pacheco was required to bring her claims in the 2020 eviction action.

## II.    There was sufficient evidence of damages.

¶17    Hoops also argues that the circuit court erred because Pacheco presented no evidence of damages.  Hoops specifically argues that Pacheco was required to produce receipts to support her claim for damages.  We disagree.

¶18    In general, damages must be established with reasonable certainty but not with mathematical precision.  *Management Comput. Servs. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 189, 557 N.W.2d 67 (1996).  "The evidence is sufficient if it enables the fact-finder to make a fair and reasonable approximation."  *Brogan v. Industrial Cas. Ins. Co.*, 132 Wis. 2d 229, 240, 392 N.W.2d 439 (Ct. App. 1986).  "We apply a highly deferential standard of review to damage awards, affirming if there is any credible evidence which under any reasonable view supports the finding."  *Selmer Co. v. Rinn*, 2010 WI App 106, ¶28, 328 Wis. 2d 263, 789 N.W.2d 621.  Moreover, violations of WIS. ADMIN.

---

[6] To the extent Hoops argues that Pacheco should have brought her wrongful eviction claims in an appeal of the wrongful eviction judgment as opposed to a post-judgment motion to amend her pleadings to add her wrongful eviction claims as counterclaims, Hoops points to no authority that would allow her to do so.

CODE § ATCP 134 governing residential rental practices allows any person who suffers a monetary loss because of a violation of that chapter to recover twice the amount of the loss. Note, WIS. ADMIN. CODE CH. ATCP 134 ("A person who suffers a monetary loss because of a violation of this chapter may sue the violator directly under s. 100.20(5), STATS., and may recover twice the amount of the loss, together with costs and reasonable attorneys' fees.")

¶19 The circuit court awarded Pacheco $5,000. It heard testimony that Pacheco paid $850 for prospective September rent after Hoops had already obtained a writ of restitution. It also heard testimony that Pacheco paid $300 per month for two years as a result of being wrongfully evicted. While it is not clear exactly how the circuit court calculated the award, the amount is justified by awarding Pacheco damages for September rent and six months of storage fees.[7] Hoops argues that Pacheco was required to provide receipts to the circuit court, however, there is no authority supporting this requirement. Testimony is evidence, and the circuit court clearly found Pacheco's testimony to be credible. Even so, the amount that the circuit court ultimately awarded Pacheco is significantly smaller than both what Pacheco demanded in her complaint and the total amount of damages that she testified that she incurred. The evidence presented was sufficient for the circuit court to make a fair and reasonable approximation of Pacheco's damages. *See **Brogan***, 132 Wis. 2d at 240.

---

[7] September rent of $850, collected unlawfully, added to $1,800 for six months of storage fees amounts to $2,650, which is doubled under the applicable rules and statutes.

### III.    Hoops failed to demonstrate judicial bias.

¶20    Hoops next argues that the circuit court's award was motivated by judicial bias.  Specifically, Hoops highlights the circuit court's questioning of Pacheco with respect to her damages.  We conclude that Hoops failed to prove that the circuit court displayed bias.

¶21    "The right to an impartial judge is fundamental to our notion of due process."  *Alliance v. Reynolds*, 2023 WI App 66, ¶35, 410 Wis. 2d 335, 1 N.W.3d 748 (citations omitted).  "We presume that a judge has acted fairly, impartially, and without bias."  *Id.*  "To overcome that presumption, the burden is on the party asserting judicial bias to show bias by a preponderance of evidence."  *Id.*  "Wisconsin courts employ both subjective and objective approaches for determining whether a party's due process right to an impartial and unbiased judge has been violated."  *Id.*, ¶36.  We construe Hoops's argument as invoking the objective approach.[8]  Objective bias occurs either when the judge's actions create the appearance of bias or when there are objective facts showing the judge in fact treated a party unfairly.  *State v. Goodson*, 2009 WI App 107, ¶9, 320 Wis. 2d 166, 771 N.W.2d 385.  "[I]t is the exceptional case with extreme facts which rises to the level of a serious risk of actual bias."  *Alliance*, 410 Wis. 2d 335, ¶38 (citation omitted).  "Whether a judge's partiality can reasonably be questioned is a question of law that we review *de novo*."  *Id.*

¶22    Hoops complains that the circuit court asked questions regarding Pacheco's damages and accuses it of basing its damages award "solely upon

---

[8] Subjective bias refers to the judge's own determination of whether he or she can act impartially.  *State v. Rochelt*, 165 Wis. 2d 373, 378, 477 N.W.2d 659 (Ct. App. 1991).

supposition." As we explained above, there was sufficient evidence to support the $5,000 award. Additionally, the circuit court's questioning of Pacheco was not improper or indicative of bias. In small claims cases, "[t]he court or circuit court commissioner may conduct questioning of the witnesses and shall endeavor to ensure that the claims or defenses of all parties are fairly presented to the court or circuit court commissioner." WIS. STAT. § 799.209(3). That is, the circuit court has a responsibility to help ensure the fair presentation of the claims and defenses of all parties, and when both parties are *pro se*, as is often the case in small claims court, directly questioning the witnesses is an efficient way of meeting that responsibility.[9] Accordingly, we conclude that the damage award was not the product of judicial bias and is instead supported by evidence in the record.

### IV. WISCONSIN STAT. § 799.24(3) did not allow Hoops to file the affidavit of noncompliance without notice in violation of the plain terms of the stipulation.

¶23 In further support of his claims for reversal, Hoops contends that WIS. STAT. § 799.24(3) gave it the right to file the affidavit of noncompliance without notice to Pacheco. Hoops's reliance on § 799.24(3) is misplaced because the actual stipulation at issue in this case unequivocally provided that notice to Pacheco was required.

---

[9] To the extent Hoops argues that the circuit court based its award on emotion and not the law, we disagree. To be sure, the circuit court was not impressed by Hoops's conduct. But here, the circuit court was the fact-finder, and it found that Hoops unlawfully took rent money from Pacheco in September 2020, despite the fact that he already obtained a writ of restitution. It also found that Hoops failed to provide notice to Pacheco that he had filed an affidavit of noncompliance, despite the fact that notice was required by the stipulation, resulting in Pacheco, her children, and her belongings being removed from the property without notice. "[J]udges are human and their emotions are influenced by the same human feelings as other people." *Breunig v. American Fam. Ins. Co.*, 45 Wis. 2d 536, 547, 173 N.W.2d 619. Our review of the trial transcript reveals that the circuit court's findings with respect to both liability and damages are strongly supported by the record.

¶24    We begin by discussing WIS. STAT. § 799.24(3). The statute reads:

> Prior to the entry of judgment, upon stipulation of the parties to a schedule for compliance with the stipulation, the court or circuit court commissioner may enter a stipulated judgment of dismissal in lieu thereof. Any such judgment may be vacated without notice to the obligated party, and the unsatisfied portion thereof entered, upon application by the prevailing party and proof by affidavit of noncompliance with the terms of the stipulation.

*Id.*

¶25    In this case, however, the stipulation that Hoops and Pacheco entered into specifically required notice to Pacheco. The stipulation reads, in relevant part: "If [Pacheco] fails to follow the terms of this stipulation, [Hoops] may vacate the dismissal and take judgment for restitution of premises (immediate Writ) with costs and disbursements <u>with</u> notice to [Pacheco] after the 3rd payment[.]" It is not clear what this language means. One interpretation is that Hoops was not allowed to vacate the dismissal and obtain a writ of restitution until after the third payment deadline expired, and even then, only after Hoops provided notice of the same to Pacheco. Ambiguity notwithstanding, we are certain that this language disallows what Hoops did in this case. The circuit court found that Hoops did not provide notice to Pacheco at any time after it filed the affidavit of noncompliance. "[N]otice to [Pacheco] after the 3rd payment" cannot mean no notice of any kind at any time. Moreover, by failing to serve the affidavit of noncompliance, Hoops violated state and local rules governing service and filing of documents with the court. WIS. STAT. §§ 801.14(1), 801.18(6); MILWAUKEE

CNTY. CIR. CT. R. 1.12.  WISCONSIN STAT. § 799.24(3) does not help Hoops in this case.[10]

**V.    WISCONSIN STAT. § 799.40(1m) does not allow landlords to pursue eviction and collect prospective rent after obtaining a writ of restitution.**

¶26    In response to the finding that Hoops improperly collected payments from Pacheco after filing the affidavit of noncompliance, Hoops argues that WIS. STAT. § 799.40(1m) allowed him to accept Pacheco's September rent payment and "continue with [its] eviction" even though he had already obtained a writ of restitution, the lease was terminated, and final judgment had been entered in the 2020 eviction action.  Hoops is wrong.

¶27    WISCONSIN STAT. § 799.40(1m) reads:

> If a landlord commences an action under this section against a tenant whose tenancy has been terminated for failure to pay rent or for any other reason, the action under this section may not be dismissed because the landlord accepts past due rent or any other payment from the tenant after serving notice of default or after commencing the action.

---

[10] In its reply brief, Hoops argues that the Milwaukee County Sheriff's Office mailed Pacheco a notice that Hoops obtained a writ of restitution and was evicting Pacheco, pointing to internal guidelines and policies setting forth procedures for executing writs of restitution.  Even if it were proper to consider these materials, they do not help Hoops in this case.  First, these policies are not evidence that the Sheriff's department actually provided notice Pacheco.  This fact was disputed at trial and resolved by the circuit court in Pacheco's favor, concluding that no notice was ever given.  Second, these policies have nothing to do with Hoops's failure to follow the terms of the stipulation and provide "notice to [Pacheco] after the 3rd payment" that he filed an affidavit of noncompliance.  Finally, Hoops does not explain how these policies would absolve him of his responsibility to serve the affidavit of noncompliance on Pacheco before filing that document in conformance with state and local rules regarding service.  WIS. STAT. §§ 801.14(1), 801.18(6); MILWAUKEE CNTY. CIR. CT. R. 1.12.

¶28 Wisconsin law has long recognized that landlords in eviction actions cannot both pursue eviction and collect prospective rent that subsequently accrues as if the lease remains in force. *See **Palmer v. City Livery Co.***, 98 Wis. 33, 34, 73 N.W. 559, 559 (1897). By pursuing an eviction action, the landlord is declaring the lease terminated. WIS. STAT. §§ 704.17, 799.40. Section 799.40(1m) does not disturb this bedrock principle because, by its plain language, it applies only to payments from the tenant for *past due* obligations. *See **State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (explaining that statutory interpretation begins with the language of the statute, and if the meaning of the statute is plain, we ordinarily stop the inquiry).

¶29 Here, Hoops admitted at trial that the $850 paid by Pacheco on September 5, 2020 was a timely payment for September rent. That is, Hoops was not accepting *past due* rent. It was accepting *prospective* September rent for a lease that it successfully terminated in court. On August 25, 2020, an order was signed granting Hoops a writ of restitution that was stayed until August 31, 2020. On September 5, 2020, Pacheco paid, and Hoops accepted, $850 for prospective September rent, despite the fact that Hoops was already in possession of a writ of restitution and the lease had been terminated. WISCONSIN STAT. § 799.40(1m) does not allow a landlord to accept prospective rent after obtaining a writ of restitution as Hoops did here.

## CONCLUSION

¶30 We conclude that claim preclusion does not apply to Pacheco's wrongful eviction claims. Pacheco was not required to bring these claims in the 2020 eviction action. We further conclude that sufficient evidence was presented to support the circuit court's damage award, Hoops failed to show that the circuit

court was biased, WIS. STAT. § 799.24(3) does not excuse Hoops's failure to provide notice to Pacheco that he had filed an affidavit of noncompliance, and that § 799.40(1m) did not allow Hoops to accept prospective September rent from Pacheco after it obtained a writ of restitution.  Accordingly, we affirm the circuit court's judgment.

*By the Court.*—Judgment affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.