CONEY, Respondent, v. MILWAUKEE & SUBURBAN TRANSPORT CORPORATION, Appellant.

*November 3—December 1, 1959.*

For the appellant there was a brief by *Kivett & Kasdorf,* attorneys, and *Alan M. Clack* and *Fred D. Huber, Jr.,* of counsel, all of Milwaukee, and oral argument by *Mr. Huber.*

For the respondent there was a brief by *Lakes & Marcuvitz* of Milwaukee, and oral argument by *Alan Marcuvitz.*

DIETERICH, J. This accident occurred August 21, 1956, at the intersection of North Seventh street and West Michigan street in Milwaukee. The vehicles involved in the accident were a trackless trolley bus, operating in a northerly

direction on North Seventh street, and the plaintiff's 1954 Dodge automobile, proceeding west on West Michigan street. The time was between 6:20 and 6:45 in the evening. The weather was clear and it was a warm day.

The plaintiff, Fred Coney, testified that he is a city civil-service employee working at the Erie street garbage-disposal plant. On Tuesday, August 21, 1956, he worked at the garbage-disposal plant until 3 p. m., and then went to a clothing store in the Schroeder Hotel where he was employed to do some cleanup work.

A little after 6 p. m., he and James Davis left the Schroeder Hotel and went to his 1954 Dodge parked on Fifth street. He proceeded south to West Michigan street en route home. He stopped at the stop sign on Fifth and Michigan, proceeded west on Michigan, stopped at the traffic light on the corner of Sixth and Michigan, and continued west. Between Sixth and Seventh streets he was in the westbound traffic lane about eight or nine feet from the north curb. He did not change his lane of travel, and there was no other traffic alongside of him or proceeding in the opposite direction. He was traveling between 15 and 20 miles per hour. The radio was not on. He was not smoking or talking with his passenger. When he was about 35 feet from the intersection, he looked to his left and saw the trolley coming about 50 feet from the south curb line. When he got almost into the intersection, he looked to his right and saw a car waiting for him to go through. When he was about five feet into the intersection he looked again to his left and the trolley was on top of him. There are stop signs on the southeast and northwest corners of the intersection. When he saw the trolley, it was south of the stop sign and he presumed it was coming to a stop. There were no horns blown or warnings given. When he saw the trolley he tried to move out of the way of it. He did not have time to apply the brakes. The collision occurred between the left front fender

of his car and the right front of the trolley. His car was dragged about 35 or 40 feet down Seventh street.

William S. Clark, called as a witness for the plaintiff, testified that he is an attorney and deputy register of deeds. That on August 21, 1956, he was driving alone in his car south to Seventh street and Michigan, and stopped for the stop sign. As he stopped for the stop sign he looked to his left and observed the Coney car coming and decided that he could not proceed across the intersection. At that time the Coney car was about mid-block between Sixth and Seventh streets. The Coney car was about in the middle of the westbound lane. He looked to his right for eastbound traffic and then looked to his left. At that time he observed the trackless trolley entering the intersection at the curb line. The Coney car was then probably 25 feet east of the intersection. He saw the vehicles coming closer together, but did not see the impact. He had started to cross Michigan street west of both vehicles. He heard the impact, parked his car, and walked back. Both the trolley and car driven by Coney had stopped about 30 feet north of the intersection and a little bit diagonally heading northwest. Clark stated that he had his car windows open and did not hear any trolley signal.

On cross-examination Mr. Clark testified that the second time he saw the automobile it was about 25 to 30 feet from the east curb line on Seventh street. The front part of the trolley was just crossing the south curb line.

James P. Davis, another witness for the plaintiff, testified that he was sitting in the right front seat of the Coney vehicle. He was not able to estimate the speed of the Coney car, but said it was not going very fast. He first saw the bus when it had left the south corner of Michigan and Seventh street. He said to Coney, "Here comes a bus," Coney replied, "I see it," and about the same time the collision occurred. Davis was thrown against the windshield.

On cross-examination Davis testified that he did not know the speed of the trackless trolley, but that the trolley was past the south curb line of Michigan when he first noticed it. He did not hear any horn blown.

Sandra Nader, called as a witness on behalf of the defendant, testified that she was a passenger in the left front cross seat of the trolley. As the trolley approached Seventh and Michigan it stopped, and some passengers got off. She was reading at the time and did not see the collision.

Rosalind Holland, called as a witness on behalf of the defendant, testified that she was seated in the second seat from the right rear of the trolley. She testified that the trolley stopped for the stop sign and some passengers were discharged. She further stated that she does not drive a car and on direct examination testified that she would estimate the speed of the automobile to be between 35 to 40 miles per hour. She did not hear any signal given.

Harry Blechschmidt, called as a witness on behalf of the defendant, testified that he had stopped his car behind the trolley. As the trolley started to cross Michigan street, he looked to the west and then to the east and saw the Coney car coming. He estimated the speed of the Coney car at between 35 and 40 miles per hour, and the speed of the trolley at about five miles per hour. He stated that the rear of the bus was just crossing the center line of Michigan at the time of impact. The left headlight of the Coney car hit the door of the trolley, but it appeared to him that the entire front end of the automobile went into the trolley.

On cross-examination Mr. Blechschmidt testified that he could not see the front of the trolley. He could not tell whether there was any slowing or stopping or attempting to slow or stop on the part of the trolley before the impact.

Bernard S. Delaney, a police officer with the Milwaukee police department, testified that he was called to the scene of the accident in the early evening of August 21, 1956.

When he arrived at the scene, the trackless trolley and the motor vehicle were about 70 feet north of the north curb line in the position of a jackknife. The left front of the Coney car was touching the right side of the trolley.

The special verdict submitted to the jury contained questions with respect to the negligence of the operator of the trackless trolley with respect to lookout, management and control, together with causation in such respects. The jury answered "No" with respect to lookout, and "Yes" with respect to management and control. The jury found the negligence as to management and control causal.

The verdict also inquired into the negligence of Coney with respect to his speed, lookout, management and control, together with causation in each respect. The jury found Coney negligent with respect to his speed, lookout, management and control and that his negligence as to lookout, management and control was causal, that his negligence as to speed was not causal.

The jury found the percentage of negligence attributable to the operator of the trolley at 65 per cent; the percentage of negligence attributable to Coney at 35 per cent; the property damage, answered by the court, $483.65; wage loss, answered by the court, $525; medical and hospital, answered by the court, $534.50; and personal injury, pain and suffering, answered by the jury, $1,000.

The defendant contends that there is no evidence to support the jury's finding of causally negligent management and control on the part of the defendant's operator.

The evidence pertaining to the movements of the trackless trolley revealed that the trolley proceeded from a stopped position south of the south curb line of West Michigan street in a northerly direction into the intersection of Seventh street and West Michigan, the latter being an arterial street, until it collided with the plaintiff's westbound vehicle. The intersection is formed by the meeting of the

afore-mentioned streets at right angles. West Michigan street is 56 feet wide from the south curb to the north curb. The trolley dragged the plaintiff's vehicle to a point about 75 feet north of the north curb line of West Michigan.

The operator of the trolley was not called as a witness. He did not testify.

The witness, William S. Clark, who had stopped for the stop sign at the northwest corner of the intersection stated he saw the plaintiff approaching from the east and that he concluded that it was not safe to venture into the intersection. He stated he saw the trolley pull out, and that he immediately came to the conclusion that a collision was imminent. He put the plaintiff's speed at about 25 miles per hour.

The trial court in preparing and submitting the questions in the special verdict to the jury, and its instructions with respect to lookout, management and control, and causation, took into consideration the fact that the operator of the trackless trolley continued to drive some 70 feet after the point of collision and that the operator did not testify.

In 20 Am. Jur., Evidence, p. 188, sec. 183, it is stated:

"It is a well-established rule that where relevant evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and he fails to do so, *without satisfactory explanation,* the jury may draw an inference that such evidence would be unfavorable to him. This rule is uniformly applied by the courts and is an integral part of our jurisprudence." (Emphasis supplied.)

In *Feldstein v. Harrington* (1958), 4 Wis. (2d) 380, 388, 90 N. W. (2d) 566, this court said:

"The general rule is that the failure of a party to call a material witness within his control, or whom it would be more natural for such party to call than the opposing party, raises an inference against such party."

The operator of the trackless trolley was a material witness and the failure on the part of the defendant to call its own employee as a witness, or to satisfactorily explain the reason for his not being called as a witness permits an inference that the witness' testimony would be or is unfavorable to the defendant's cause.

In 2 Wigmore, Evidence (3d ed.), p. 162, sec. 285, it is stated:

"The failure to bring before the tribunal some circumstance, document, or witness, when either the party himself or his opponent claims that the facts would thereby be elucidated, serves to indicate, as the most natural inference, that the party fears to do so, and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party. These inferences, to be sure, cannot fairly be made except upon certain conditions; and they are also open always to explanation by circumstances which make some other hypothesis a more natural one than the party's fear of exposure. But the propriety of such an inference in general is not doubted.

"The nonproduction of evidence that would naturally have been produced by an honest and therefore fearless claimant permits the inference that its tenor is unfavorable to the party's cause."

### Lookout by Inference of Trolley Operator.

There was ample and credible testimony from which the jury could infer that the operator of the trolley stopped at the southeast corner of the intersection and that he saw the Coney vehicle approaching from the east, and it found that the operator did see the approaching vehicle, and that he was not negligent as to lookout. The finding is sustained by the evidence.

*Management and Control of Trolley Operator.*

The witness Clark found it advantageous not to venture into the intersection because he stated the plaintiff was 25 feet from the intersection when the trolley began to cross. Certainly the operator of the trolley could also have managed his trolley in such a manner as to have avoided colliding with the Coney vehicle. The trackless trolley elected to set up an obstruction in the path of the oncoming plaintiff's vehicle and thereby caused the collision. The jury was entitled to draw such inference from the evidence presented by this particular witness. *Kilcoyne v. Trausch* (1936), 222 Wis. 528, 269 N. W. 276.

We find from an examination of the record credible evidence and testimony to support the findings of the jury set forth in the special verdict.

*By the Court.*—Judgment affirmed.