MULLEN, Appellant, v. REISCHL, Respondent.

*April 5—May 3, 1960.*

For the appellant there was a brief by *John R. Craite* and *Roland J. Steinle, Jr.,* both of Milwaukee, and oral argument by *Mr. Steinle.*

For the respondent there was a brief by *Cape & Schellinger,* attorneys, and *Stanley F. Schellinger* and *James G. Doyle* of counsel, all of Milwaukee, and oral argument by *Stanley F. Schellinger.*

CURRIE, J. The issues raised on this appeal by the appellant plaintiff are as follows:

(1) Is there any credible evidence to sustain the finding of the jury with respect to the contributory negligence of the plaintiff?

(2) Was the negligence of the defendant Reischl as a matter of law greater than that of the plaintiff?

(3) Is there credible evidence to sustain the jury's findings of causal negligence because of the tampering with the boards covering the stair well on the part of the impleaded defendants Mertins?

(4) Was it error for the trial court to grant a nonsuit as to the cause of action grounded upon the safe-place statute, sec. 101.06?

In view of the fact that the defendant Reischl won the verdict below we must consider the evidence from the standpoint most favorable to defendant. *Henthorn v. M. G. C. Corp.* (1957), 1 Wis. (2d) 180, 184, 83 N. W. (2d) 759. Therefore, in reviewing the evidence, it is only necessary to set forth those parts that sustain the verdict, although there may have been other testimony in the record which contradicted the same.

The premises where the accident occurred on December 9, 1955, consisted of a farmhouse near Mukwonago in Waukesha county which had been remodeled so as to have three living apartments. At the time of the accident, one of such apartments was occupied by the impleaded defendants, Mr. and Mrs. Mertins, and another was occupied by a Mr. and Mrs. Kranz and their children.

The plaintiff was a divorcee, thirty years of age, who had a twelve-year-old son who for some years had been boarded by Mr. and Mrs. Mertins. Such son had been placed in the Mertins' home by Children's Service of Milwaukee, a child-welfare agency.

The Mertins had owned the premises for several years but on October 18, 1955, they entered into a written contract for the sale of such premises to the defendant Reischl.

Before such sale there had been an old shed approximately 15 x 30 feet attached to the rear of the building, which shed inclosed both the rear door of the Mertins' apartment and an open stair well leading down into the basement. There was also an inside stairway by which the basement could be reached. The Mertins had torn down such old shed and were in the process of erecting a new addition to replace it when such contract of sale was entered into on October 18th. A foundation wall of stone and concrete blocks for the new addition had been built and joists had been laid across the same to support a floor. Reischl was dissatisfied with such joists because they were uneven and made of old lumber. He employed one Judeus, a carpenter, to construct the new addition under his (Reischl's) direction.

In the course of such construction the old joists were ripped out and new joists installed 16 inches apart. The new addition was approximately 12 feet wide and 20 feet in length, and the joists were laid across the narrower of the two dimensions, so that they were parallel with the length of the stair-well opening which was some 3½ to 4 feet wide. Pursuant to the request of the Mertins, the joist which was to run lengthwise across such stair-well opening was temporarily omitted in order that the Mertins might later remove their deep freezer from the basement because it was too large to take out through the inside stairway. In installing the floor across the joists, temporary boards some 5 feet in length were laid crosswise across the stair well, and one nail was placed at the end of each board so as to temporarily nail such boards in place. These boards were 6 or 8 inches wide. Some were 2 inches thick and some 1 inch thick, but those 1 inch thick were laid double. Judeus weighed approximately 220 pounds and stated that such temporary boards when in place were strong enough to support his weight.

By November 14, 1955, Judeus had completed the work for which he was employed. The outside walls of the addition were covered with sheathing, the roof boards were on, and three windows complete with window glass were installed. There was also installed an outer door on hinges and equipped with a doorknob, which temporarily was nailed shut with two nails. There was no step installed leading to such door and the door sill was some 22 inches above ground level. There was still work to be done to complete the addition and it presented an unfinished appearance.

Mrs. Mertins testified that she removed one of the boards over the stair well in order to run a hose from the basement up through the stair well and out through the outer door of the addition. Such hose was used by her on washdays once each week in order to drain water out of the basement.

Reischl returned to the premises about November 18th and found that the nails had been removed from some of the boards covering the stair well and that the nails had been removed from the outer door. He again temporarily nailed down the boards over the stair well and nailed the outer door shut. Reischl did not go to the premises again until after the plaintiff had incurred her accident on December 9th.

There is some conflict in the testimony whether the Kranz family, the other tenants in the main dwelling, used the outside stair well after October 18, 1955. Neither Mr. nor Mrs. Kranz was called as a witness. Mr. Mertins testified positively that the Kranz family never used the outside stair well after October 18th. Reischl testified that shortly before December 8th the tenant Kranz complained that the Mertins would not permit the former to use the inside stairway leading to the basement. Mrs. Mertins denied that such permission had been refused and stated that the Kranzes continued to use the inside stairway right up to December 8th.

On December 8, 1955, Mr. Reischl and the Mertins met at a real-estate office in Milwaukee for the closing of the sale of the premises from the Mertins to Reischl at which time a deed was executed and delivered from the former to the latter. In connection with such real-estate closing, the Mertins deposited $250 in escrow to insure their removal of certain personal property, junk, and rubbish from the property. The written escrow agreement contained an express clause whereby the Mertins agreed to permit the tenant Kranz to enter the basement through the inside stairway. This provision was inserted because of the complaint Reischl had received that the Mertins had denied use of such stairway to Kranz.

On the afternoon of December 9, 1955, plaintiff made a trip by automobile from Milwaukee to the premises in question in order to call for her son at the Mertins' apartment and take him with her for the weekend. She arrived at the premises about twenty minutes to four. She went to the front door of the Mertins' apartment, knocked several times, and called out but no one came. Then she proceeded to the rear of the building and noticed the door leading into the new addition. She turned the doorknob of such door, entered, and attempted to cross the floor of such addition in order to gain entrance to the Mertins' apartment through the kitchen door thereof which opened into such addition. In doing so she stepped on the boards across the stair well and one or more of such boards broke, causing her to drop feet first onto the steps of the stair well below, thereby injuring herself.

### The Plaintiff's Negligence.

The plaintiff attacks the finding of the jury that she failed to exercise ordinary care for her own safety. This necessitates that we search the record for evidence which would justify the jury in making such finding.

The plaintiff had on some occasions prior to the commencement of the building of the new addition, entered the Mertins' kitchen through the rear door, but had not done so after such construction had begun. On the last visit of the plaintiff to the Mertins' home prior to the accident, which visit occurred in November, a blanket had been nailed over the inside of the rear door because of the construction work going on outside. When on December 9th the plaintiff walked to the rear of the building after failing to get any response to her knocking at the front door, the appearance of the new addition was such as to warn her that it was not yet completed. The absence of any step in front of the door of the addition through which she entered, necessitating that she step up a distance of at least 22 inches, also should have been a warning to her that the work inside had not been completed. At the time of the accident the plaintiff weighed 105 pounds and yet her weight was sufficient to cause one or more of the boards across the stair well to break when she stepped on them. Keeping in mind Judeus' testimony that the one-inch boards across the stair well were laid a double thickness, the jury could well conclude that she must have stepped on only one thickness of board. This being so, if the plaintiff were exercising due care for her own safety, she would have noticed the difference in the level of the floor boards over the stair well caused by the removal of one thickness of board.

It is our conclusion that there is ample credible evidence upon which the jury could have based their finding that the plaintiff was contributorily negligent.

### Comparative Negligence.

The plaintiff did not recover in this action because the jury, in answering the comparative-negligence question, apportioned 40 per cent of the total aggregate negligence to the plaintiff, and only 20 per cent thereof to the defendant

Reischl. It is contended by the plaintiff that Reischl's negligence as a matter of law exceeded that of the plaintiff.

The jury had the right to believe the testimony of Judeus that, at the time he completed his work on the addition on November 14th, as to how the boards had been placed across the stair-well opening and had been nailed down at each end, thus presenting no hazard to anyone walking across such boards. The only time that Reischl came to the premises thereafter prior to the accident was on November 18th when he found that some of these boards had been removed and he again put them in place and nailed them down, and nailed the outer door shut. The jury in finding Reischl negligent apparently concluded that he should have taken further action thereafter to see that such floor boards were not tampered with. However, the jury in apportioning only 20 per cent of the aggregate negligence to Reischl, apparently considered that his negligence in this respect was not great in view of the precautions he had already taken to make conditions safe.

This court has declared many times that it is only in unusual fact situations that it will disturb the jury's comparative-negligence answers. We do not deem this to be a proper case in which to do so.

### Negligence of the Mertins.

It is the further contention of the plaintiff that there is no evidence to sustain the jury's finding of causal negligence on the part of Mr. and Mrs. Mertins. By such finding the jury determined that the Mertins had tampered with the boards over the stair well and that this tampering was causal.

In arguing this point it is the position of the plaintiff that Mrs. Mertins' testimony, that only one board was removed in running the hose up through the stair-well opening from the basement, and that such board was not at the point where the plaintiff fell, is conclusive upon the jury.

We do not consider that this is so. There is no evidence that anyone had access to the addition between November 18th and the time of the accident on December 9th, except the Mertins and the Kranz family, who were the only occupants of the dwelling unit. There is testimony in the record which the jury were entitled to believe that the Kranz family used the inside stairway to gain access to the basement and, therefore, did not make use of the stair well during this period. It is clear that at least one thickness of board had been removed at a place where the boards were laid double in order for the plaintiff to have broken through the boards over the stair well. The jury could well infer that it was the tampering with such boards by Mrs. Mertins in running the hose up through the stair-well opening which did this.

In any event, the Mertins are not before this court challenging such finding of negligence on their part, but only the plaintiff. Someone other than Reischl apparently negligently tampered with the boards between November 18th and December 9th. We fail to see how the ascribing of 40 per cent of the total negligence to such tampering with the boards in any way prejudiced the comparison of negligence between the plaintiff and Reischl. The finding of the jury which is controlling on this appeal is that the plaintiff was more negligent than the defendant Reischl.

*Safe-Place Statute.*

The trial court granted a nonsuit as to the plaintiff's cause of action predicated upon the safe-place statute on the ground that the building where the accident occurred was neither a place of employment nor a public building. Apparently the trial court concluded that because Judeus and his helper had completed their work on the addition on November

14th, and no other work on the addition had been undertaken since such date, the premises were not a place of employment at the time the accident occurred on December 9th. The trial court was of the opinion that the building was not a public building because, although designed to be occupied by three tenants, only two tenants were occupying it on December 9th.

We find it unnecessary to pass on the correctness of the trial court's determination that the premises were neither a place of employment nor a public building on December 9, 1955. This is because in the plaintiff's motions after verdict she did not ask the court to review the granting of the defendant's motion for nonsuit as to the cause of action grounded upon the safe-place statute. Not having raised such issue in the motions after verdict, the plaintiff is precluded from raising the same as a matter of right on this appeal. *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 518, 80 N. W. (2d) 380.

We do not deem that there has been a miscarriage of justice here that requires us to exercise our discretionary power to consider the safe-place-statute issue. The question which was included in the verdict as to Reischl's negligence fairly closely parallels the question which we recently recommended be included in the special verdict to be submitted in an action in which the plaintiff seeks to recover for personal injuries claimed to have resulted from the defendant's violation of the safe-place statute. *Krause v. Veterans of Foreign Wars* (1960), 9 Wis. (2d) 547, 101 N. W. (2d) 645. If the case had gone to the jury on the theory of violation of the safe-place statute, the plaintiff would have been entitled to an instruction as to the duty of the defendant Reischl to have maintained the premises as safe as the nature of the place reasonably permitted.

However, we very much doubt if the giving of such instruction would have produced any different result in this case.

In view of our recent decision in *Krause v. Veterans of Foreign Wars, supra,* it is not necessary for a plaintiff to plead a violation of the safe-place statute as a separate cause of action merely because the complaint also alleges acts on the part of the defendant which would constitute negligence at common law. This is because there is but one cause of action and that is for negligence.

*By the Court.*—Judgment affirmed.