ANN WALSH BRADLEY, J.
¶ 50. (dissenting). If an attorney were advising someone who had fallen because of a snow-covered or icy sidewalk, likely one of the things the client would be told is to take a picture of the conditions with a cell phone or camera.
¶ 51. Why? A picture says a thousand words and represents some of the best evidence. But if a picture says a thousand words, then a video speaks volumes.
¶ 52. In this case, the conditions, both before and after the fall, were recorded on Speedway's surveillance cameras. The video recordings they created were played to the jury and provided a wealth of information— evidence — about the condition of the area where Mr. Kochanski fell.
¶ 53. It is only by refusing to acknowledge what is depicted in this video evidence presented to the jury that the majority is able to discard the jury verdict and conclude that Speedway had no notice of the unsafe condition. Thus, the majority usurps the role of the jury, substituting its own limited view of the evidence for that of the actual evidence of record presented to the jury.
¶ 54. The majority also turns a blind eye to the circuit court's actual rationale for giving the missing witness instruction, thus skewing the circuit court's *35 analysis. As a result, the majority is able to sidestep the deference an appellate court is to give to a circuit court when it makes a discretionary determination that the evidence of record supports the giving of a particular instruction.
¶ 55. Perhaps most problematic of all, however, is not the majority's failure to acknowledge actual evidence of record or ignoring the circuit court's actual rationale for giving the missing witness instruction. Those errors potentially affect the outcome of only this particular case. Most problematic is the majority's failure to acknowledge well-settled safe place precedent which has the potential to unsettle long-standing safe place jurisprudence for years to come.
¶ 56. When I consider the evidence presented to the jury, the circuit court's actual rationale, and our safe place precedent, I conclude that the jury's findings and the circuit court's discretionary decision to give the missing witness jury instruction are to be given deference. There is credible evidence that supports the jury's verdict. Likewise, the circuit court's discretionary decision to give the absent witness instruction was grounded in a reasonable view of the evidence of record.
¶ 57. Assuming for argument's sake that it was error to give the instruction, I conclude such error was harmless. Our law is clear that Kochanski could have made closing arguments about the inferences to be drawn from the missing witnesses even without the jury instruction. Contrary to the majority's assertion that the instruction was a substitute for any evidence in the record, there was ample credible evidence — with or without the instruction — for the jury to find that Speedway had notice of the unsafe condition.
¶ 58. Accordingly, I respectfully dissent.
*36 I.
¶ 59. The majority attempts to avoid the tried- and-true standard of appellate review by simply refusing to acknowledge the evidence of record presented to the jury. It is only by substituting its own limited view of the evidence for that of the actual evidence considered by the jury that the majority is able to overturn the jury's verdict and conclude as a matter of law that Speedway had no notice of the unsafe condition.
¶ 60. It has long been established that the question of negligence under the safe place statute is for the jury.[1] See Gould v. Allstar Ins. Co., 59 Wis. 2d 355, 361, 208 N.W.2d 388 (1973); Heiden v. Milwaukee, 226 Wis. 92, 102, 275 N.W. 922 (1937); Dugenske v. Wyse, 194 Wis. 159, 165, 215 N.W. 829 (1927). Appellate review of such determinations "is very limited, narrow, and circumscribed." Hoffmann v. Wis. Elec. Power Co., 2003 WI 64, ¶ 9, 262 Wis. 2d 264, 664 N.W.2d 55. We must view evidence "in a light most favorable to a verdict" and will not upset a verdict or finding of fact if "there is any credible evidence which, under a reasonable view, admits to an inference which supports the verdict." Becker v. Barnes, 50 Wis. 2d 343, 345, 184 N.W.2d 97 (1971).
¶ 61. Our review is even more restrained where, as here, the verdict has the approval of the circuit court. In such cases we have repeatedly stated that jury *37 determinations are afforded "special deference." D.L. Anderson's Lakeside Leisure Co. v. Anderson, 2008 WI 126, ¶ 22, 314 Wis. 2d 560, 757 N.W.2d 803; Hoffmann, 262 Wis. 2d 264, ¶ 9; Meurer v. ITT General Controls, 90 Wis. 2d 438, 450, 280 N.W.2d 156 (1979). "Therefore, this court will not upset a jury verdict unless there is such a complete failure of proof that the verdict must have been based on speculation." Hoffmann, 262 Wis. 2d 264, ¶ 9 (citing Coryell v. Connecticut, 88 Wis. 2d 310, 315, 276 N.W.2d 723 (1979)).
¶ 62. Notice, in particular, is a matter this court has generally declared to be a jury question. Burmek v. Miller Brewing Co., 12 Wis. 2d 405, 413, 107 N.W.2d 583 (1961); see also Werner v. Gimbel Bros., Inc., 8 Wis. 2d 491, 493, 99 N.W.2d 708 (1959) ("The only issue on this appeal is the question of fact whether the defendants' actual or constructive notice of the unsafe condition of the walk warned them in time to require them to take reasonable precautions to prevent such an accident. We consider that the evidence bearing on that issue presents a jury question not to be determined as a matter of law.").
¶ 63. Here, the jury was instructed that in order to find that Speedway failed to maintain the premises as safe as its nature would reasonably permit, it must find that Speedway had actual or constructive notice of the defect. The jury made such a finding, which the majority now overturns as a matter of law.
¶ 64. The majority is able to disregard the jury's findings because it fails to acknowledge that the evidence considered by the jury showed the unsafe condition, that the employees had notice of the condition, and that an employee later ameliorated the condition by salting. Instead it suggests that the only relevant information on the video is that it was snowing. See Majority op., ¶ 37 ("[A] temporary natural accumula *38 tion of snow is insufficient to provide notice of an unsafe condition under the safe-place statute."), ¶ 44 ("Kochanski provided no evidence that Speedway had actual notice of an unsafe condition based solely on the video showing a light accumulation of snow."), ¶ 48 ("To allow the absent witness instruction to substitute for evidence in this manner would subvert the requirement that a plaintiff prove notice in a safe-place claim.").
¶ 65. The heart of the safe place claim rests on the issues of notice of the condition of the premises and procedures employed by Speedway to keep the premises "as safe as the nature of the .. . place ... will reasonably permit." See Wis. Stat. § 101.01(13). Contrary to the majority's conclusion, there was ample credible evidence in the record — both testimonial and video — to support the jury's findings.
¶ 66. The jury heard testimony that between one half and two inches of snow had fallen that morning. Kochanski testified that as he approached the front door of the Speedway store, he observed what he thought was a wheelchair cut-out from the elevated sidewalk abutting the store. It was immediately in front of the door. To the right there was a visible segment of a yellow painted line that marked the edge of the elevated sidewalk. No yellow painted line was visible immediately in front of him. Rather, it was covered with snow.
¶ 67. Likewise, the video pictures revealed to the jury that snow covered all portions of the yellow painted line that edged the elevated sidewalk, with the exception of a segment of the yellow paint to the right of the doors. The edge of the sidewalk was partially hidden to those who entered and exited the front entry door.[2]
*39 [[Image here]]
¶ 68. The video pictures also revealed that the outside snow conditions were in plain view of the Speedway employees. At all relevant times, at least one employee was stationed at a cash register located within a few feet of the front door and immediately next to the front side of the building. The front side of the building as well as the front doors were glass.
¶ 69. Kochanski told the jury that after he fell he lay in front of the entry door, writhing in pain. He observed two Speedway employees looking out at him, but they did nothing to assist him. The video picture[3] below shows the two Speedway employees looking out the window at Kochanski during the time that he is lying on the sidewalk.
[[Image here]]
*40 ¶ 70. Kochanski testified at trial that as he was lying on the ground in front of the door, he saw someone come out of the store with salt. He stated that she came around the corner on the north side of the building and then went back. The video footage presented to the jury also revealed someone salting after Mr. Kochanski was taken from the scene. The first picture below[4] shows a woman salting the sidewalk. The second video picture, from approximately 45 minutes later, shows that after the fall and salting, the yellow line edging the pavement was visible to all.
[[Image here]]
¶ 71. The video footage is helpful in that it demonstrated to the jury the unsafe condition, i.e. the snow covering the yellow line on the curb, that the unsafe *41 condition was in plain view of Speedway employees, that Speedway had some policy or procedure on salting, and that the salting eliminated the unsafe condition. When considering all of the evidence presented to the jury, it is apparent that there is credible evidence that supports the jury's findings that Speedway had notice of the unsafe condition and that it did not maintain the premises as safe as its nature would reasonably permit.
II.
¶ 72. In addition to ignoring evidence of record, the majority also turns a blind eye to pivotal parts of the record which state the circuit court's actual rationale for giving the missing witness instruction. As a result, the majority skews the circuit court's analysis.
¶ 73. This court accords deference to a circuit court's decision to give a particular jury instruction. A circuit court is on the front lines during a trial. It sees the evidence firsthand and is in the best position to evaluate whether it supports giving a particular jury instruction. As the majority correctly notes, "[a] circuit court has broad discretion to instruct a jury." Majority op., ¶ 10 (citing Nommensen v. Am. Cont'l Ins. Co., 2001 WI 112, ¶ 50, 246 Wis. 2d 132, 629 N.W.2d 301).
¶ 74. After reviewing the evidence and considering the parties' arguments, the circuit court decided to give the absent witness jury instruction. Admittedly, the missing witness instruction is to be sparingly given. Here, the circuit court clearly stated its reasoning on the record and succinctly summarized its reasoning for giving the instruction. The first two reasons focus on the former employees who did not testify:
Number one, all five were placed on the witness list by Speedway;
*42 Number Two, it does not appear that any effort was made to subpoena any of those five;
The third reason discusses Speedway's failure to call any of its current employees:
Number three, as to Speedway's policy and practices, current employees are capable of giving that testimony, and none of them has been subpoenaed either.
The fourth reason focuses on the materiality of their testimony, reasoning that the jury has a right to know Speedway's policies regarding salting, particularly whether there was any salting done of the sidewalk area before the accident:
And then Number Four, I think that the jury has a right to know what Speedway's policies are regarding salting; and, particularly the videotape, at least so far, has not shown whether or not the premises or the area were salted before the accident.
For all of those reasons, the Court has decided that Instruction 410 [the absent witness instruction] should be given.
¶ 75. On appeal, "review of the trial court's decision is deferential." DeChant v. Monarch Life Ins. Co., 204 Wis. 2d 137, 148, 554 N.W.2d 225 (Ct. App. 1996). Our examination is two-fold: (1) did the circuit court's instruction correctly state the law and (2) was the instruction "grounded on a reasonable construction of the record." Id. at 151.
¶ 76. Here, no one argues that the jury instruction misstated the law. We are left then to examine whether a reasonable view of the evidence of record supports the giving of the instruction.
*43 ¶ 77. Instead of deferring to the circuit court, the majority skews the circuit court's analysis and concludes that it was error to give the absent witness instruction.
¶ 78. At the threshold of its analysis, the majority correctly notes there are three elements necessary to support a jury instruction regarding an absent witness: (1) that the uncalled witness has material information, (2) that the uncalled witness is within the control of the party or that it is more natural for a party to call that witness, and (3) that it is reasonable to infer that the absent witness would have exposed facts unfavorable to the party.[5] Majority op., ¶ 13. After determining that the three elements have not been met, the majority concludes that the giving of the instruction was error.
¶ 79. In reaching this conclusion, the majority skews the circuit court's stated rationale in two ways. First, in considering materiality, it reframes the issue, focusing on whether the employees had knowledge of the independently contracted snow removal methods *44 rather than the actual focus of the circuit court— Speedway's policies for salting. Majority op., ¶ 23. In elaboration, the majority cites the lack of proof that the employees would know about the snow removal services, relying on the fact that Speedway's witness list indicated it had an independent contractor for snow removal. Id.
¶ 80. The circuit court's rationale had nothing to do with the independently contracted snow plowing procedures. Rather, the circuit court clearly stated that its concern about Speedway's salting policies informed the fourth rationale for giving the absent witness instruction: "I think that the jury has a right to know what Speedway's policies are regarding salting; and, particularly the videotape, at least so far, has not shown whether or not the premises or the area were salted before the accident."
¶ 81. In this case, testimony regarding Speedway's salting policies is relevant to determining whether Speedway had reasonably adequate processes in place to maintain their premises in as safe a condition as its nature would reasonably permit. A reasonable construction of the record supports the circuit court's determination that the employees would have this information. As noted above, Mr. Kochanski's testimony described someone coming out of the store and salting while he was lying on the ground. The videotape also shows someone salting after Mr. Kochanski had left. Indeed, from the video footage, the results after the salting can also be viewed. Further, Speedway's witness list indicates that the employees might be called to testify about Speedway's policies and procedures concerning maintaining the safety of the premises.
¶ 82. Even if the employees could not testify about policies and procedures, their lack of knowledge regarding a salting policy or procedure may be relevant. Like *45 wise, their knowledge (or lack thereof) of the unsafe condition was directly at issue due to the safe place claim.
¶ 83. Second, the majority also skews the circuit court's stated rationale in its analysis of whether it would be more natural for Speedway or Kochanski to call the employees to testify by focusing exclusively on former employees. It concludes it is not more natural for Speedway to call the former employees but leaves a total void in its analysis regarding whether it would be more natural for Speedway to call current employees as witnesses to testify about the policies and procedures for salting. Majority op., ¶ 24. Although the circuit court specifically addressed current employees in its analysis, the majority dismisses them entirely. Id. Rather than analyzing the circuit court's actual rationale, it attempts to delegitimize it by merely noting that Kochanski did not advance the argument. Id.[6]
¶ 84. If it had analyzed the propriety of giving the missing witness instruction vis-a-vis current employees, the majority's conclusion would be unsupportable. *46 So what does it do? It ignores the current employees and as a result also ignores the circuit court's stated rationale.
¶ 85. The circuit court explained that the third basis of its reasoning for giving the missing witness instruction focused exclusively on current employees, not former employees: "Number three, as to Speedway's policy and practices, current employees are capable of giving that testimony, and none of them has been subpoenaed either."
¶ 86. Kochanski argues that the absent witness instruction was appropriate based on Speedway's failure to introduce the testimony of any of the employees on duty on the day of his accident or any other employees (including current employees) who would have knowledge of Speedway's practices and procedures regarding salting and snow removal. Under our precedent, current employees are viewed as being under the control of their employer, or at least more natural for the employer to call. See, e.g., Coney v. Milwaukee & Suburban Transp. Corp., 8 Wis. 2d 520, 527, 99 N.W.2d 713 (1959).
¶ 87. Indeed, at oral argument Speedway acknowledged the obvious: when it comes to current employees, it would be easier for Speedway to compel their testimony and they would be more likely to testify in favor of their employer.
J. Bradley: If this had been a situation where the employees, or some of them, were still current - how does that affect your analysis and argument? Would it?
Attorney for Speedway: Well if there were some current employees, that, I think that would have made a difference. Because then there's an employer-employee relationship. And it's easier to compel that person to *47 appear. That person who's a current employee is much more willing or much more apt to testify favorably for their employer.
Yet, the majority fails to acknowledge the obvious. The consequence of this failure is more than just having an analysis that is a couple of bubbles off plumb. By reaching its conclusion without considering current employees, the majority skews not only the circuit court's stated rationale, it also skews the result of its opinion.
¶ 88. If the majority had considered the current employees as absent witnesses, it would be reasonable to conclude that it would be natural for Speedway to call the employees as witnesses and that their testimony would naturally favor Speedway, satisfying the third showing necessary for giving the absent witness instruction. See Coney, 8 Wis. 2d at 527 (where employee was a material witness, "the failure on the part of the defendant to call its own employee as a witness, or to satisfactorily explain the reason for his not being called as a witness permits an inference that the witness' testimony would be or is unfavorable to the defendant's cause.").
¶ 89. In sum, the majority errs by analyzing its own skewed version of the circuit court's rationale rather than analyzing the actual rationale stated on the record. Had it analyzed the circuit court's actual rationale, the majority's conclusion that the instruction was erroneously given could not stand. Here, the jury instruction correctly stated the law and was grounded on a reasonable construction of the record. Accordingly, the discretionary decision to give the jury instruction is to be accorded deference by a reviewing court. DeChant, 204 Wis. 2d at 148.
*48 III.
¶ 90. The majority also misstates or ignores well-settled safe place precedent which has the potential to unsettle safe place precedent for years to come.
¶ 91. As the majority explains, a plaintiff must establish that a defendant had actual or constructive notice of an unsafe condition in order to prevail on a safe place claim. Majority op., ¶ 32. It indicates that constructive notice can be established in two ways: (1) by showing that the unsafe condition existed for a long enough time that a reasonably vigilant owner would have discovered and repaired it, or (2) by showing the nature of the business, the nature of the condition, and the public policy involved so that the jury could find that the defendant's methods and processes would reasonably be expected to give rise to the unsafe the condition. Id. at ¶ 34-35. The majority concludes that because none of these was shown, the jury would not have found that the defendant had actual or constructive notice of the unsafe condition without taking an impermissible inference from the absent witness jury instruction. Id. at ¶ 44-45.
¶ 92. Missing from the majority's analysis is any reference to our plain view precedent. Constructive notice may be established by showing that the unsafe condition was in plain view of the defendant. See Terrence Berres, Boyle's Wisconsin Safe-Place Law (online ed. 2006) ("Time of a defect's existence is of no materiality where it was readily observable to an agent or employee who was in the area.").
¶ 93. For example, in Rudzinski v. Warner Theatres, Inc., 16 Wis. 2d 241, 114 N.W.2d 466 (1962), where a woman slipped on wet spots on the floor only a few feet from where the usher was sitting, the court *49 concluded there was a sufficient basis for finding notice even without any indication of how long the spots had been there. "This is because [the wet spots] were in plain view of this usher and the jury would be warranted in concluding that he should have seen them. This would afford sufficient basis for a finding of constructive notice." Id. at 249.
¶ 94. Likewise, in Caldwell v. Piggly Wiggly Madison Co., 32 Wis. 2d 447, 145 N.W.2d 745 (1966), even though the unsafe condition existed for only a short period of time, the court determined that there was sufficient evidence of constructive notice because the manager was in a position from which he could have seen the unsafe condition if he had looked in that direction. The court explained that "[the jury] could have concluded that the hazard was in plain view even if [the manager] in fact had not seen it." Id. at 455.
¶ 95. Here, the majority fails to acknowledge that the evidence shows that the unsafe condition was in plain view of an employee. Kochanski fell in front of the doors to the Speedway. The doors and surrounding fagade of the building are glass. From this, the jury could have determined that the unsafe condition was in plain view of an employee inside the store and that an employee should have observed the condition, constituting constructive notice to Speedway.
¶ 96. Based on the video evidence, the jury could also have found that Speedway employees had actual notice of its unsafe condition. Indeed, the video footage from Speedway's surveillance cameras shows that the checkout counter is right next to the window and an employee standing there behind the register prior to the accident. Later portions of the video show two employees looking out the window at Kochanski.
*50 ¶ 97. The majority overlooks this plain view evidence and fails to apply our plain view safe place precedent. Instead, it incorrectly determines that the jury would not have found notice but for the absent witness instruction.[7]
¶ 98. The majority's discussion of the safe place claim also errs by ignoring well-established caselaw on the special verdict question. The majority recites the verdict question that the circuit court read regarding liability: "Was Speedway SuperAmerica LLC, through the acts of its employees, negligent in failing to maintain the Speedway SuperAmerica premises as safe as its nature would reasonably permit on February 6, 2007?" Id., ¶ 30. The majority then suggests that this instruction was improper because it combined the standards of care and the elements of proof for negligence and safe place claims. Id., ¶ 31. In support of this suggestion, the majority points to a case from the mid-1950s. Majority op., ¶ 31 n.13 (citing Sturm v. Simpson's Garment Co., 271 Wis. 587, 74 N.W.2d 137 (1956)).
¶ 99. Our law on the form of the safe place jury instruction has since changed. The circuit court's special verdict question was consistent with the change in law and with caselaw that we have been relying on for decades. For example, see Krause v. VFW Post No. 6498, 9 Wis. 2d 547, 554, 101 N.W.2d 645 (1960); Mullen v. *51 Reischl, 10 Wis. 2d 297, 307, 103 N.W.2d 49 (1960); Petoskey v. Schmidt, 21 Wis. 2d 323, 331-32, 124 N.W.2d 1 (1963); Presti v. O'Donahue, 25 Wis. 2d 594, 599, 131 N.W.2d 273 (1964); Skybrock v. Concrete Constr. Co., 42 Wis. 2d 480, 484, 167 N.W.2d 209 (1969); Carr v. Amusement, Inc., 47 Wis. 2d 368, 375, 177 N.W.2d 388 (1970); May v. Skelley Oil Co., 83 Wis. 2d 30, 34, 264 N.W.2d 574 (1978); Topp v. Continental Ins. Co., 83 Wis. 2d 780, 783, 266 N.W.2d 397 (1978); Barry v. Emp'rs. Mut. Cas. Co., 2001 WI 101, ¶ 33, 245 Wis. 2d 560, 630 N.W.2d 517.
¶ 100. In 1960, the Krause court instructed circuit courts to use essentially the same language that the circuit court used here. 9 Wis. 2d at 554. Krause instructed that the special verdict question ask: "... was the defendant negligent with respect to maintaining the dance hall as safe as the nature of the place reasonably permitted?" Id. Likewise, the special verdict question that the circuit court read is based on the model jury instruction: "[w]as (defendant) negligent in failing to (construct) (repair) (maintain) the premises as safe as the nature of its business would reasonably permit?" Wis JI — Civil 1900.4.
¶ 101. The majority's criticism of the instruction appears to be that it combines a negligence claim with a safe place claim. Majority op., ¶ 31. This criticism overlooks the long recognized role of negligence in a safe place claim. A safe place claim is based on negligence with a higher standard of care than ordinary negligence. Krause, 9 Wis. 2d at 552. See also Barry, 245 Wis. 2d 560, ¶ 18 ("Wisconsin's safe place statute, Wis. Stat. § 101.11(1), is a negligence statute that.. . establishes a duty greater than that of ordinary care imposed at common law."). See also Gennrich v. Zurich Am. Ins. Co., 2010 WI App 117, ¶ 23, 329 Wis. 2d 91, 789 N.W.2d 106.
*52 ¶ 102. The special verdict question used in this case is essentially the same as the language that was indicated by our caselaw decades ago and was in substance the same as provided in the model jury instruction, Wis JI — Civil 1900.4. The model instruction and comments were approved by the Wisconsin Jury Instruction Committee in 1974. Wis JI — Civil 1900.4, Comment. Despite the suggestion of the majority, there was nothing improper with the wording of the instruction used in this case.
IV
¶ 103. The majority's discussion of the safe place law is contained in its analysis of whether it was harmless error to give the absent witness instruction. It determines that because the jury had no basis in the record to find that Speedway had notice of the unsafe condition, the error in giving the absent witness instruction was not harmless. Majority op., ¶ 48.
¶ 104. Contrary to the majority I conclude that even if it was error for the circuit court to give the absent witness instruction, such error was harmless.
¶ 105. Notably, Kochanski could still have pointed to the nonproduction of the employees in closing arguments and suggested the jury make an inference even if the circuit court had not given the absent witness instruction. See Feldstein v. Harrington, 4 Wis. 2d 380, 390, 90 N.W.2d 566 (1958) ("It also would have been proper for plaintiffs counsel to comment in the argument to the jury on such failure of the defendants to have called Dr. Houkom, if the fact had previously been established in evidence that such doctor had examined the plaintiff at the defendants' request."); cf. Ballard., 33 Wis. 2d at 615 ("[The court] did permit the defendant *53 to comment to the jury upon the nonproduction of the chiropractor and, as a consequence, the defendant could not have been prejudiced by the failure to give the specific instruction.").
¶ 106. The only grounds for the majority's conclusion that the instruction was not harmless is the lack of evidence of notice on the safe place claim. Majority op., ¶¶ 44, 49. The majority reasons that because there is no evidence of notice in the record, the only way the jury would have found in favor of Kochanski was if it had taken an impermissible inference based on the absent witness jury instruction. Id. Contrary to the majority's assertion that the instruction was a substitute for any evidence in the record, here there was ample credible evidence — with or without the instruction — for the jury to find that Speedway had notice of the unsafe condition.
V
¶ 107. As discussed above, the majority fails to acknowledge the evidence presented to the jury supporting its verdict; fails to deal with the circuit court's actual rationale, including the analysis of current employees and the policies on salting; and fails to apply established safe place precedent on plain view and jury instructions.
¶ 108. Contrary to the majority, I apply the tried-and-true standards of appellate review and conclude that both the jury's determination of negligence and the circuit court's discretionary decision to give the absent witness instruction are to be accorded deference. There was ample credible evidence in the record for the jury's verdict. Further, the circuit court's instruction correctly stated the law and was based on a reasonable *54 construction of the record. In any event, even if it was error to give the instruction, such error was harmless. Accordingly, I respectfully dissent.
¶ 109. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.

 The safe place statute states:
Every employer shall furnish employment which shall be safe for the employees therein and shall furnish a place of employment which shall be safe ... for frequenters thereof.. . and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters. ...
Wis. Stat. § 101.11(a).

 This image is from 12:54:46 on the surveillance tape. The online version of this opinion displays the images in color and more clearly shows where the snow obscured the yellow line from vision.

 This image is from 12:54:57 of the surveillance tape. Again, the online version of this opinion is displayed in color and more clearly shows the images.

 The first image is at 12:59:21 on the surveillance tape, the second image is at 01:45:22 on the surveillance tape.

 The majority states: "a court may give the instruction only if there are facts in the record that would allow the jury to reasonably draw a negative inference from the absence of a particular material witness." Majority op., ¶ 13 (citing Thoreson v. Milwaukee & Suburban Transp. Corp., 56 Wis. 2d 231, 237, 201 N.W.2d 745 (1972); State v. Glenn, 199 Wis. 2d 575, 585, 545 N.W.2d 230 (1996)) (emphasis added).
For several reasons it appears that the majority's use of the word "particular" is akin to a fugitive word in the sentence: (1) the cases cited neither support nor even mention the word "particular" anywhere in the opinions; (2) because the word "particular" is not further used and the concept is not further discussed, it is unclear in application what degree of particularity is required; and (3) in some situations it may be unworkable because the party asking for the instruction may not know what "particular" witness or witnesses are knowledgeable and should have been called to testify.

 The majority also suggests that giving the absent witness instruction based on Speedway's failure to call current employees is somehow improper as it places the burden on Speedway to call" 'possible witnesses] to a fact, lest [its] failure to do so will result in an inference against [it].1" Majority op., ¶ 24 (quoting Ballard v. Lumbermens Mut. Cas. Co., 33 Wis. 2d 601, 615, 148 N.W.2d 65 (1967)) (alterations in majority op.).
In Ballard, this court stated that the absent witness instruction does not place a burden on a party to call "every possible witness to a fact." Id. However, that statement was made in reference to an absent witness whose testimony would have been cumulative of other testimony presented. Id. Requiring Speedway to call a witness (or sufficiently explain witnesses' absences) is far different from requiring Speedway to call every possible witness.

 Additionally, the physical appearance of an unsafe condition may be circumstantial evidence from which a jury could infer the length of time it had been present. See, e.g., Gulbrandsen v. H & D, Inc., 2009 WI App 138, ¶ 15, 321 Wis. 2d 410, 773 N.W.2d 506.
In this case, the snow in the area of the fall was dirty and trampled. From this the jury could have inferred that the snow had been there for a long enough time that Speedway should have discovered it and thus had constructive notice of the unsafe condition.